Richard M. Pachulski (SBN 90073)
Jeffrey W. Dulberg (SBN 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Tel: 310.277.6910
Fax: 310.201.0760
Email: rpachulski@pszjlaw.com
        jdulberg@pszjlaw.com

Attorneys for Genesis Capital, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>1550 Blue Jay Way, LLC, a Delaware limited liability company,<br><br><br>                    Debtor. | Case No.: 8:16-bk-15171-CB<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF GENESIS CAPITAL FOR ORDER DISMISSING CHAPTER 11 CASE AND GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JOHN DAY AND JEFFREY W. DULBERG IN SUPPORT THEREOF**<br><br>Hearing Date:  February 22, 2017<br>Time:            10:00 a.m.<br>Courtroom:     5D |

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY JUDGE, DEBTOR AND ITS COUNSEL, THE UNITED STATES TRUSTEE, AND OTHER INTERESTED PARTIES:**

PLEASE TAKE NOTICE that, pursuant to 11 U.S.C. § 1112(b) of the United States Code (the "Bankruptcy Code"), Genesis Capital, LLC (together with its affiliates, "Genesis" or "Movant") hereby moves this Court (this "Motion") for an order dismissing the above-captioned case (the "Chapter 11 Case") of 1550 Blue Jay Way, LLC (the "Debtor" or "Blue Jay Way").

Movant seeks the dismissal of the Chapter 11 Case[1] on the basis that this case represents a classic two-party dispute between the Debtor and Movant, and the Debtor has acted in bad faith in filing its voluntary petition, refusing to identify the Affiliated Cases as single asset real estate (SARE) cases subject to the special strictures of the Bankruptcy Code,  and in engaging in stonewalling and other dilatory postpetition conduct, all as described further below.

**PLEASE TAKE FURTHER NOTICE** that the Motion has been served upon the Debtor, its counsel, parties requesting special notice, and all creditors, and is based upon the supporting Memorandum of Points and Authorities, the Declarations of John Day and Jeffrey W. Dulberg, the statements, arguments and representations of counsel who appear at the hearing on the Motion, the files and records in the above-captioned case, any evidence properly before the court prior to or at the hearing regarding the Motion and all matters of which the Court may properly take judicial notice.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), responses to the Motion must be filed with the Court and served upon the counsel for Genesis at the address in the upper left-hand corner of this Motion no later than fourteen (14) days prior to the hearing date.  Responses must contain a written statement of all reasons the Motion is opposed and must include declarations and copies of all documentary evidence on which the responding party intends to rely.  Responses must be filed either electronically or at the following location:

United States Bankruptcy Court
411 West Fourth Street
Santa Ana, CA 92701

**PLEASE TAKE FURTHER NOTICE** that if a response is not timely filed and served, Genesis will request that the Court grant the relief requested in the Motion without further notice or hearing.

---

[1] This Motion is in some respects substantively similar to the motions to dismiss filed by Genesis (collectively, the "Affiliated Motion(s)") filed in each of the chapter 11 cases of the Debtor's affiliates (together with the Debtor, the "Affiliated Debtors" or the "Debtors") pending before this Court – 779 Stradella, LLC, Case No. 16-15156-CB; Mt Yohai, LLC, Case No. 16-15157-CB; and 2401 Nottingham, LLC, Case No. 16-15243-CB (together with the foregoing chapter 11 cases including the Debtor's case, the "Affiliated Cases").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:303691.5 30599/001

002

**WHEREFORE**, Movant requests that the Court dismiss the Chapter 11 Case with prejudice and grant such other and further relief as may be just and appropriate.

Dated:  February 1, 2017                    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey W. Dulberg*
Richard M. Pachulski
Jeffrey W. Dulberg

Attorneys for Genesis Capital, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Genesis -the first-priority secured creditor in the Chapter 11 Case- simply seeks fair and reasonable limitations to be placed upon the Debtor.  Undeniably, the Debtor filed its case to thwart Movant's scheduled foreclosure proceedings with respect to the Debtor's real property located at 1550 Blue Jay Way, Los Angeles, California 90069, and associated personal property (the "Property").  In connection with its bankruptcy filing and from the outset of the Chapter 11 Case, the Debtor has been acting in bad faith – in effect, stringing along Movant, as detailed further below.  This is a matter of a two-party bankruptcy case that should be superseded to allow a secured lender to exercise its state law rights and remedies against a bad faith debtor.

**II.**

**RELEVANT FACTUAL BACKGROUND**

**A.    Movant's Claims Against Debtor and Lien In the Property**

In June 2015, the Debtor executed, among other documents, (i) a Note in favor of Genesis Capital Master Fund III, LLC, a California finance lender, in the principal amount of $4.85 million; (ii) a Loan Agreement, dated as of June 29, 2015, with Genesis (the "Loan Agreement"); and (iii) a Deed of Trust against the Property recorded in Los Angeles County (Document No. 20150830113) (the "DOT" and collectively with other loan related documents, the "Loan Documents").  Pursuant to the Loan Documents, the Debtor borrowed $4.85 million from Genesis, with a maturity date of September 1, 2016.  The Debtor's obligations under the Loan Documents are secured by the DOT against the Property and are also absolutely and unconditionally guarantied by the Debtor's principal and sole manager, Jeffrey Yohai, pursuant to a Commercial Guaranty (the "Yohai Guaranty").[2] Copies of the Loan Agreement, DOT, and Yohai Guaranty are attached to the Declaration of John Day.  The Loan Agreement (at p. 1) provides, among other things, that any breach under the terms of any other agreement between any affiliate of the borrower and the lender constitutes a default under

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2]  Movant reserves all of its rights and claims against Mr. Yohai regarding his guaranty of the Debtor's obligations under the Loan Documents.

the Loan Agreement.  As noted further below, the business loans provided by Genesis to each of the other Affiliated Debtors (with respect to the purchase and development of the Affiliated Debtors' developments) were also guarantied by Mr. Yohai and contained similar cross-default provisions.

The Debtor subsequently defaulted under the Loan Documents, and a Notice of Default was recorded in Los Angeles County on August 18, 2016.  As of December 15, 2016, the total payoff amount due under the Loan Documents was no less than $5.5 million.  Movant's claim continues to accrue daily interest of approximately $1,684 (or approximately $5,000 per month).  A foreclosure sale was scheduled for December 23, 2016.  The Debtor filed the Chapter 11 Case on December 22, 2016 to stop the foreclosure.  The Debtor admitted this fact in its Notice of Scheduling and Case Management Conference Report [Docket No. 14] (in response to question item "What precipitated the bankruptcy filing?" Debtor stated: "Pending foreclosure sale by lien holder – Genesis Capital Master Fund III, LLC").

The Debtor has scheduled Movant's secured claim in the Debtor's Schedules of Assets and Liabilities, filed on January 27, 2017 (the "Schedules") [Docket No. 37], in the amount of $5.5 million.  Movant's claim is scheduled as not disputed, not contingent, and liquidated.

**B.    The Property**

The Property consists of a lot and residence thereon located at 1550 Blue Jay Way, Los Angeles; the residence was constructed prepetition by Jeffrey Yohai (and/or his affiliates or agents), which had been expected to be sold by Mr. Yohai to a third party upon or prior to construction completion.  The purchase, construction and/or completion of this project were to be funded (in whole or in part) by the loan proceeds from Movant pursuant to the Loan Documents.

The Debtor filed the Chapter 11 Case with no employees, no money, and no strategy in place, aside from precluding Movant from continuing to exercise its rights as a secured creditor under applicable non-bankruptcy law, which proceedings were commenced prepetition.  The Debtor lacks the basic funds to preserve and protect the Property (including the payment of property taxes which continue to accrue interest and/or penalties).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**C.    Yohai's Single Commercial Project Including the Debtor's Property**

As acknowledged by the Affiliated Debtors in their respective Notice of Scheduling and Case Management Conference Report, the Affiliated Debtors are in the business of real estate development, and each Affiliated Debtor filed a chapter 11 case to stay pending foreclosure proceedings by the secured lender, Genesis.[3]

Each Affiliated Debtor is controlled by Jeffrey Yohai, the sponsor for these real estate developments and manager of the Affiliated Debtors.  Each Affiliated Debtor owns a parcel of real property with one or more residential units constructed thereon by Mr. Yohai and/or his affiliates, other than the Mt. Yohai property which is, as of the petition date, raw land, which Mr. Yohai planned to develop as well.

Based on the circumstances of the Affiliated Debtors and Affiliated Cases, Movant believes that the Affiliated Cases are properly designated as single asset real estate (SARE) cases under Code section 101(51B), including the following:

(1)    Each real property (owned by the respective Affiliated Debtor) was acquired and is being held for development or sale by Mr. Yohai and/or his affiliates, and not for any other business purpose.  Based on information and belief, no other business is being conducted on these real properties, which generate substantially all of the gross income of the Affiliated Debtors.  *See* Day Declaration, ¶7(i).

(2)    Mr. Yohai is the sponsor and manager of, and ultimately controls, each of these four developments.  *See* Day Declaration, ¶ 7(ii).

(3)    Mr. Yohai, through his underwriting related representations, principal sponsorship and executed guaranties in favor of Genesis, procured funding for each development from Genesis.  Thus, the financing for these four developments is substantively connected and intertwined (*e.g.,* Mr. Yohai guaranties, cross-defaults, *etc.*).  *See* Day Declaration, ¶ 7(iii).

(4)    Mr. Yohai has been marketing for sale the residences built or to be built on the real properties as common developments materialized by Mr. Yohai and/or his affiliates.  *See, e.g.,*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[3] Genesis is authorized to file this Motion on behalf of itself and its lender affiliates.

DOCS_LA:303691.5 30599/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

http://www.marinw.com/new-index-1/ (a printout of this webpage is attached to the Day

Declaration).

Notwithstanding the foregoing (and the legal authorities discussed further below), the Debtor

and other Affiliated Debtors failed to designate the Affiliated Cases as SARE cases.  The Affiliated

Debtors' improper identification of the Affiliated Cases should be viewed and recognized by the

Court as an attempt to sidestep the special statutory strictures provided in favor of secured lenders in

SARE cases.[4]

**D.    Debtor's Dilatory Postpetition Conduct**

Subsequent to the Affiliated Cases filings, the Debtor engaged in bad faith stonewalling and

other dilatory conduct, to drag the cases along at Movant's expense.  In particular, promptly

following the filing of the cases, on December 28, 2016, counsel for Genesis reached out to counsel

for the Debtors in an effort to begin a dialogue.  Rather than Mr. Yohai, however, the Debtor's

counsel informed Genesis that Mr. Matthew Browndorf of Wilson Keadjian Browndorf LLP, a New

York based attorney with no apparent connection to the Debtors, would be the Debtors'

representative for any negotiations.

Naturally, Genesis was surprised to learn that an outside party who had yet to seek Court

approval to represent the Debtor – and still has not – would be speaking for the Debtor.  Genesis

inquired of Messrs. Forsythe and Browndorf specifically as to the "bona fides" of Mr. Browndorf –

*did he have specific authority to speak for the Debtors, not to mention, authority to bind them*?

Messrs. Browndorf and Forsythe repeatedly assured Genesis that Mr. Browndorf was so authorized

although they were unable or unwilling to produce anything in writing to this effect.

Nonetheless, Genesis proceeded in the utmost good faith to engage in discussions with Mr.

Browndorf.  For approximately two weeks, through January 13, 2017, Genesis engaged in settlement

discussions with Mr. Browndorf with respect to each of the Debtors.  Although led to believe that

Mr. Browndorf had the authority to negotiate for the Debtors in good faith, as it turned out, this was

untrue.  After devoting many hours to negotiations, some two weeks after Mr. Browndorf initiated

---

[4] In the event that the Court is not inclined to dismiss the Chapter 11 Case, Movant requests the Court to have the
Affiliated Cases designated as SARE cases.

DOCS_LA:303691.5 30599/001

1    the discussions, Genesis came to learn (a) Mr. Yohai had not authorized Mr. Browndorf to represent,

2    much less bind, him or the Debtors and (b) Mr. Yohai "vehemently" disagreed with Mr.

3    Browndorf's assessment of certain of the Debtors' properties and would not honor the tentative

4    agreement reached with respect to 2401 Nottingham.  Despite this regretful turn of events, Genesis

5    persisted in good faith to attempt to continue negotiations with the Debtors through Mr. Forsythe.

6    Genesis was assured by Mr. Forsythe that the Debtors would "pick up the pieces" and re-start a good

7    faith discussion; on the contrary, neither Mr. Forsythe nor Mr. Yohai have been heard from since.

8            It is plain to see that the Debtors are – at best – managed in a grossly incompetent manner.

9    Rather than conduct a straightforward discussion with its lender, the Debtors elected to drag Genesis

10   through a month of wasted discussions followed by several weeks of outright stalling and silence.

11   The Debtors obviously intended to harm Genesis through this conduct and they have done so by

12   prejudicing Genesis' rights as a lender to an SARE project and by failing to honor its promises made

13   in negotiations with Genesis.

14   **E.**     **Debtor's Lack of Compliance With Bankruptcy Requirements**

15           The Debtor has shirked its bankruptcy related obligations in several respects.  Indeed, in each

16   of the Affiliated Cases including this Chapter 11 Case (other than the 2401 Nottingham case which

17   was dismissed at a January 11 status conference), based on those Affiliated Debtors' lack of

18   compliance with bankruptcy requirements, the U.S. Trustee filed a motion to dismiss each of those

19   Affiliated Cases or to convert to chapter 7.  A hearing on those motions to dismiss is also scheduled

20   for February 22, 2017.  Movant submits that the Debtor's lack of timely and full compliance with

21   postpetition bankruptcy requirements, together with the Debtor's bad faith stonewalling (described

22   above), collectively demonstrate an attempt by the Debtor to misuse and abuse the bankruptcy

23   process for improper purposes.

                                          **III.**

                                       **ARGUMENT**

26           The Debtor filed for bankruptcy on the eve of foreclosure in order to utilize the automatic

27   stay as a delay tactic, preventing Movant (or overbidder) from acquiring the Property, as it is entitled

28   to do under applicable non-bankruptcy law.  The Debtor filed its bankruptcy case (in essence, a two-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

                                            8

party dispute), to improperly frustrate Movant's exercise of its foreclosure rights and remedies and improperly exert leverage over Movant (as well as to sidestep SARE related bankruptcy requirements) – and not to properly rehabilitate a debtor.[5]

A.    **The Chapter 11 Case Should Be Dismissed for "Cause" Under § 1112(b)**

If a party-in-interest (such as Movant) establishes the existence of "cause," the Court must -- absent unusual circumstances -- dismiss or convert the case, whichever is in the best interests of creditors and the estate.  11 U.S.C. § 1112(b); *see In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (section 1112 limits the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause); *see also In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal such that this Court has no choice, and no discretion in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under [section] 1112(b)(4)." (emphasis in original)); *In re Rubenstein*, 71 B.R. 777, 778 (B.A.P. 9th Cir. 1987) (same).

Section 1112(b) of the Bankruptcy Code provides a list of 16 non-exclusive grounds for dismissal or conversion on the basis of "cause."  11 U.S.C. § 1112(b)(4)(A) – (P).  These grounds are not meant to be exhaustive, but rather to be illustrative in assisting courts in determining whether "cause" exists under section 1112(b).  *Gateway*, 374 B.R. at 561; *In re Consolidated Pioneer Mortgage Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) ("The enumerated causes are not exhaustive, and 'the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases'").  One court concluded that: "it has been established since the adoption of Section 1112 that Congress used the word 'includes' purposefully and that the grounds listed in the statute are non-exclusive."[6]  *In re Ameribuild Constr. Mgmt.*, 399 B.R. 129, 131 (Bankr. S.D.N.Y. 2009).  Because the grounds listed in the statute are non-exclusive,

---

[5] It should be noted that the Ninth Circuit has eliminated the possibility of a debtor avoiding paying default interest under a loan agreement by proposing a cure under a plan.  *See In re New Investments, Inc.*, 840 F.3d 1137 (9th Cir. 2016) (plain language of section 1123(d) compels holding that debtor cannot nullify obligation in loan agreement to pay post-default interest; finding *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988), to no longer be valid).  That is, the Debtor cannot cite the avoidance of post-default interest and penalties as a legitimate, proper goal for its chapter 11 filing.

[6] Under section 102(3), the Bankruptcy Code's Rules of Construction provide that the term "includes" is not limiting.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    courts should and, in fact, often do "consider other factors" in determining whether "cause" has been

2    shown.  *Gateway*, 374 B.R. at 561; *In re Products Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz.

3    2008) (noting that courts have "wide discretion" to determine what constitutes "cause" under section

4    1112(b)) (citations omitted).

5        Lack of good faith in filing a chapter 11 petition establishes cause for dismissal.  11 U.S.C. §

6    1112(b); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994).   In the context of

7    filing a petition, "good faith" is a term of art.  "Though it suggests that the debtor's subjective intent

8    is determinative, this is not the case.  Instead, the 'good faith' filing requirement . . . [is intended] to

9    deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *Id.*

10   "[T]he test is whether a debtor is attempting to unreasonably deter or harass creditors or attempting

11   to effect a speedy, efficient reorganization on a feasible basis."  *Id.* (citing *In re Arnold*, 806 F.2d

12   937, 939 (9th Cir. 1986)).   "The purpose of the good faith requirement is to ensure that the

13   hardships imposed on creditors are justified by fulfillment of statutory objectives."  *In re Liberate*

14   *Technologies*, 314 B.R. 206, 211 (Bankr. N.D. Cal. 2004).

15
16   > It is easy to see why courts have required Chapter 11 petitioners to act within the scope of the bankruptcy laws to further a valid reorganizational purpose.   Chapter 11 vests petitioners with considerable powers—the automatic stay, the exclusive right to propose a reorganization plan, the discharge of debts, etc.—that can impose significant hardship on particular creditors. When financially troubled petitioners seek a chance to remain in business, the exercise of those powers is justified. But this is not so when a petitioner's aims lie outside those of the Bankruptcy Code.
17
18
19

20   *Id.* (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 165-66 (3d Cir. 1999)).

21       Whether a petition is filed in good faith is to be determined upon consideration of all the

22   facts and circumstances of the case.  *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar*

23   *Plaza, L.P.),* 314 F.3d 1070, 1075 (9th Cir. 2002); *In re Marsch*, 36 F.3d at 828.  Once the issue is

24   raised, it is the debtor's burden to prove that its petition was filed in good faith.  *Leavitt v. Soto (In re*

25   *Leavitt)*, 209 B.R. 935, 940 (BAP 9th Cir. 1997), *aff'd*, 171 F.3d 1219 (9th Cir. 1999); *SGL Carbon*

26   *Corp.*, 200 F.3d at 162 n.10.  Under the facts of this case, the Debtor should find good faith to be

27   lacking.

28

To determine whether a debtor has filed a petition in bad faith, courts within the Ninth Circuit typically weigh a variety of circumstantial factors such as whether:

> (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan Qof reorganization or to make adequate protection payments; and (5) the case is essentially a two party dispute capable of prompt adjudication in state court.

*St. Paul Self Storage LP v. Port Authority (In re St. Paul Self Storage LP)*, 185 B.R. 580, 582-83 (BAP 9th Cir. 1995) (citing *In re Stolrow's Inc.*, 84 B.R. 167 (BAP 9th Cir. 1988)); *see also Leavitt*, 209 B.R. at 940.

As explained above, the Debtor's only asset is the Property – which was in midst of foreclosure until the Debtor improperly filed the Chapter 11 Case.  Further, there is no ongoing business, and the Debtor has no funds or apparent access to sufficient funds to sustain a chapter 11 plan and/or to reorganize.  And with very few unsecured creditors involved given the nature of the Debtor's business, the Chapter 11 Case is, in essence, a two party dispute between the Debtor and Movant, which dispute should be resolved through state law means.  Relatedly, as discussed above, the Debtor has failed to comply with postpetition bankruptcy requirements and engaged in bad faith stonewalling against Movant, which together further evidence the Debtor's intent to misuse and abuse the bankruptcy process for improper purposes.

Further, the Debtor's bad faith is demonstrated by the Debtor's improper attempt to sidestep SARE related bankruptcy requirements.  To prove that separate properties –like the Affiliated Debtors' real properties– constitute "single asset real estate," it must be shown: "(1) that there is a single property or <u>project</u>, other than residential real property with fewer than 4 residential units; (2) that generates substantially all of the gross income of a debtor; and (3) that no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto."  *In re Georgina, LLC*, 2016 Bankr. LEXIS 4212, *3 (Bankr. C.D. Cal. Dec. 7, 2016) (J. Barash) (emphasis added, citing *In re Meruelo Maddux Properties, Inc.*, 667 F.3d 1072, 1076 (9th Cir. 2012).  To be part of a "single project" "the properties must be linked together in some 'common scheme' governing the present use of the properties."  *Georgina, LLC*, 2016 Bankr.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

LEXIS 4212, at *3, *6 n.2 (citing *In re Hassen Imports P'ship*, 466 B.R. 492, 507 (Bankr. C.D. Cal. 2012); that the real properties do not share a common border is "not determinative in and of themselves").  Courts in the Ninth Circuit have considered various factors when determining if multiple properties constitute a single project, including (1) the use of the properties; (2) the circumstances surrounding the acquisition of the properties, including the time of the acquisition and the funds used to acquire the properties; (3) the location of the properties and proximity of the properties to one another; and (4) any plans for future development, sale or abandonment of the properties.  *Id.*, at *4; *Hassen Imports P'ship*, 466 B.R. at 507.

As discussed above, the following circumstances strongly support the conclusion that the Affiliated Cases are SARE cases: (i) each real property (owned by the respective Affiliated Debtor) was acquired and is being held for development or sale by Mr. Yohai and/or his affiliates, and not for any other business purpose; (ii) no other business is being conducted on these real properties, which generate substantially all of the gross income of the Affiliated Debtors; (iii) Mr. Yohai is the sponsor and manager of, and ultimately controls, each of these four developments; (iv) Mr. Yohai, through his representations, principal sponsorship and executed guaranties in favor of Genesis, procured funding for each development from Genesis, thus intertwining and connecting the financing for these four developments; and (v) Mr. Yohai has been marketing for sale the residences built or to be built on the real properties as common developments materialized by Mr. Yohai and/or his affiliates.  *See also In re Philmont Development Co.*, 181 B.R. 220, 224 (Bankr. E.D. Pa. 1995) (stressing that while debtor might not have treated financing of construction of houses as a single project, the bank did); *In re Pioneer Austin East Development I, Ltd.*, 2010 Bankr. LEXIS 2160, *4 (Bankr. N.D. Tex. July 1, 2010) (definition of SARE "recognizes that real estate development can be completed in separate projects, comprised of several tracts or parcels of land, and still constitute a single property for the purpose of single asset real estate cases"); *In re Light Foot Group LLC*, 2011 Bankr. LEXIS 4399, *10 (Bankr. D.Md. Nov. 10, 2011) ("the fact that Debtor's residential rental business takes place over five tracts of land acquired at different times does not change the nature of the case"); *In re Harmony Holdings, LLC*, 2008 Bankr. LEXIS 2106, *4 (Bankr. D. S.C. 2008) ("The real property is a single project despite the fact that it was acquired as several tracts of land,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    has been partly developed, and is owned by two entities," where all functions and responsibilities of

2    ownership were conducted through one entity).

3        Notwithstanding the foregoing, the Debtor and other Affiliated Debtors failed to designate

4    the Affiliated Cases as SARE cases.  The Affiliated Debtors' mis-identification of the Affiliated

5    Cases should be recognized by the Court as an improper effort to avoid the special statutory

6    strictures provided in favor of secured lenders in SARE cases like Movant.

7        In sum, the Debtor's bad faith provides good cause for dismissal of the Chapter 11 Case.

8    **IV.**

9    **<u>CONCLUSION</u>**

10       For the reasons set forth above, Movant requests that the Court enter an order dismissing the

11   Chapter 11 Case under § 1112(b) with prejudice, and granting such other and further relief as the

12   Court deems necessary and appropriate.

13

14   Dated:  February 1, 2017         PACHULSKI STANG ZIEHL & JONES LLP

15                         */s/ Jeffrey W. Dulberg*
                           Richard M. Pachulski

16                         Jeffrey W. Dulberg

17                         Attorneys for Genesis Capital, LLC

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

**DECLARATION OF JOHN DAY**

I, John Day, declare as follows:

1.    I am the Chief Legal Officer and Chief Risk Officer of Genesis Capital, LLC (together with its affiliates, "Genesis" or "Movant").  I joined Genesis as General Counsel in July 2015; I have been the Chief Legal Officer and Chief Risk Officer since September 2016.  In my capacity with Genesis, I have general knowledge of the books and records of Genesis, and am familiar with Genesis' business and operations.

2.    I submit this Declaration in support of the *Notice of Motion and Motion of Genesis Capital for Order Dismissing Chapter 11 Case and Granting Related Relief* (the "Motion"). Capitalized terms not defined herein have the meanings used in the Motion.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of Genesis' books and records, relevant documents and other information prepared or collected by Genesis' employees, agents and/or advisors, or my opinion based on my experience with Genesis. In making my statements based on my review of Genesis' books and records, relevant documents and other information prepared or collected by Genesis' employees, agents and advisors, I have relied upon these persons accurately recording, preparing or collecting any such documentation and other information.  If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion.  I am authorized to submit this Declaration on behalf of Genesis.

**Genesis' Secured Claim**

3.    In June 2015, the Debtor executed, among other documents, (i) a Note in favor of Genesis Capital Master Fund III, LLC, a California finance lender, in the principal amount of $4.85 million; (ii) a Loan Agreement, dated as of June 29, 2015, with Genesis (the "Loan Agreement"); and (iii) a Deed of Trust against the Property recorded in Los Angeles County (Document No. 20150830113) (the "DOT" and collectively with other loan related documents, the "Loan Documents").  Pursuant to the Loan Documents, the Debtor borrowed $4.85 million from Genesis, with a maturity date of May 1, 2016.  The Debtor's obligations under the Loan Documents are secured by the DOT against the Property and are also absolutely and unconditionally guarantied by

DOCS_LA:303691.5 30599/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Debtor's principal and sole manager, Jeffrey Yohai, pursuant to a Commercial Guaranty (the "Yohai Guaranty").  True and correct copies of the Loan Agreement, DOT, and Yohai Guaranty are attached hereto as **Exhibit A**.

4.      The Debtor subsequently defaulted under the Loan Documents, and a Notice of Default was recorded in Los Angeles County on August 16, 2016.  As of December 15, 2016, the total payoff amount due under the Loan Documents was no less than $5.5 million.  Movant's claim continues to accrue daily interest of approximately $1,684 (or approximately $5,000 per month).  A foreclosure sale was scheduled for December 23, 2016.  The Debtor filed the Chapter 11 Case on December 22, 2016 to stop the foreclosure.

**The Debtor's Property**

5.      The Property consists of a lot and residence thereon located at 1550 Blue Jay Way, Los Angeles; the residence was constructed prepetition by Jeffrey Yohai (and/or his affiliates or agents), which had been expected to be sold by Mr. Yohai to a third party upon or prior to construction completion.  The purchase, construction and/or completion of this project were to be funded (in whole or in part) by the loan proceeds from Movant pursuant to the Loan Documents.

**Yohai's Single Commercial Project Including the Debtor's Property**

6.      Based on entity operating agreements and other information and documents provided to Genesis by Jeffrey Yohai in connection with the underwriting and loan application processes at Genesis (the "Loan Processes"), each Affiliated Debtor is controlled by Jeffrey Yohai, as the sponsor for these real estate developments and manager of the Affiliated Debtors; and each Affiliated Debtor owns a parcel of real property with one or more residential units constructed thereon by Mr. Yohai and/or his affiliates, other than the Mt. Yohai property which is, as of the petition date, raw land, which Mr. Yohai planned to develop as well.

7.      Based on documents and information provided to Genesis by Mr. Yohai as part of or related to the Loan Processes, Genesis is informed and believes that:

(i)      each real property (owned by the respective Affiliated Debtor) was acquired and is being held for development or sale by Mr. Yohai and/or his affiliates, and not for any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

other business purpose; and no other business is being conducted on these real properties, which generate substantially all of the gross income of the Affiliated Debtors;

(ii)    Mr. Yohai is the sponsor and manager of, and ultimately controls, each of these four developments;

(iii)    Mr. Yohai, through his underwriting related representations, principal sponsorship and executed guaranties in favor of Genesis, procured funding for each development from Genesis. Thus, the financing for the four developments of the Affiliated Debtors is substantively connected and intertwined (*e.g.,* Mr. Yohai guaranties, cross-defaults, *etc*.);

(iv)    Mr. Yohai has been marketing for sale the residences built or to be built on the real properties as common developments materialized by Mr. Yohai and/or his affiliates. A true and correct copy of a marketing website page affiliated with Mr. Yohai (http://www.marinw.com/new-index-1/) is attached hereto as **<u>Exhibit B</u>**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

1     I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true

2  and correct to the best of my knowledge.

3     Executed this 1st day of February 2017 at Woodland Hills, California.

4

5     _____

6                    John Day

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

DOCS_LA:303691.4 30599/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DECLARATION OF JEFFREY W. DULBERG

I, Jeffrey W. Dulberg, declare as follows:

1.     I am an attorney duly admitted to practice by the State of California and before this Court.

2.     I am a partner of the Firm and am duly admitted and licensed to practice in the State of California and to practice before this Court.

3.     I submit this Declaration in support of the *Notice of Motion and Motion of Genesis Capital for Order Dismissing Chapter 11 Case and Granting Related Relief* (the "<u>Motion</u>"). Capitalized terms not defined herein have the meanings used in the Motion.

4.     Attached hereto as **<u>Exhibit C</u>** is a copy of the transcript of the status conference held before the Court on January 11, 2017, in the Affiliated Debtors' cases.

5.     Subsequent to the Affiliated Cases filings, the Debtor engaged in bad faith stonewalling and other dilatory conduct, to drag the cases along at Genesis' expense. In particular, promptly following the filing of the cases, on December 28, 2016, I reached out to counsel for the Debtors in an effort to begin a dialogue. Rather than Mr. Yohai, however, the Debtor's counsel informed me that Mr. Matthew Browndorf of Wilson Keadjian Browndorf LLP, a New York based attorney with no apparent connection to the Debtors, would be the Debtors' representative for any negotiations.

6.     Naturally, I was surprised to learn that an outside party who had yet to seek Court approval to represent the Debtor – and still has not – would be speaking for the Debtor. I inquired of Messrs. Forsythe and Browndorf specifically as to the "bona fides" of Mr. Browndorf – *did he have specific authority to speak for the Debtors, not to mention, authority to bind them*? Messrs. Browndorf and Forsythe repeatedly assured me that Mr. Browndorf was so authorized although they were unable or unwilling to produce anything in writing to this effect.

7.     Nonetheless, I proceeded in the utmost good faith to engage in discussions with Mr. Browndorf. For approximately two weeks, through January 13, 2017, I engaged in settlement discussions with Mr. Browndorf with respect to each of the Debtors. Although led to believe that

DOCS_LA:303691.5 30599/001

Mr. Browndorf had the authority to negotiate for the Debtors in good faith, as it turned out, this was untrue.  After devoting many hours to negotiations, some two weeks after Mr. Browndorf initiated the discussions, I came to learn (a) Mr. Yohai had not authorized Mr. Browndorf to represent, much less bind, him or the Debtors and (b) Mr. Yohai "vehemently" disagreed with Mr. Browndorf's assessment of certain of the Debtors' properties and would not honor the tentative agreement reached with respect to 2401 Nottingham.  Despite this regretful turn of events, I persisted in good faith to attempt to continue negotiations with the Debtors through Mr. Forsythe.  I was assured by Mr. Forsythe that the Debtors would "pick up the pieces" and re-start a good faith discussion; on the contrary, neither Mr. Forsythe nor Mr. Yohai have been heard from since.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 1st day of February, 2017, at Los Angeles, California

*/s/ Jeffrey W. Dulberg*
Jeffrey W. Dulberg

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**This page is part of your document - DO NOT DISCARD**



## 20150830113



**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/10/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 52.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 52.00 |



**L E A D S H E E T**



201507100190017

**00010844723**



006952586

**SEQ:**
**02**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T21

021

Case 8:16-bk-15171-CB    Doc 40    Filed 02/01/17

95955

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

Genesis Capital Master Fund III, LLC
21650 Oxnard Street Suite 1700
Woodland Hills, CA 91367
Loan Number: 15-648



07/10/2015

*20150830113*

## DEED OF TRUST AND ASSIGNMENT OF RENTS

This Deed of Trust, made 6/29/2015, between 1550 BlueJay Way, LLC, a Delaware Limited Liability Company herein called Trustor, whose address is c/o Czik Law PLLC, 401 Greenwich Street, 4th Floor, New York, New York 10013 and Genesis Capital Master Fund III, LLC, a Delaware limited liability company,  a California Finance Lender ( 60DBO-35928) herein called Beneficiary, whose address is 21650 Oxnard Street, Suite 1700, Woodland Hills, CA 91367 and Fidelity National Title, herein called Trustee,

Witnesseth: THAT TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in Los Angeles County, California, described as:

Please See Legal Description 'Exhibit A'

APN: 5561-011-013
Street Address: 1550 Bluejay Way, West Hollywood Area, Los Angeles, CA 90069

TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (11) of the provisions set forth below to collect and apply such rents, issues and profits. For the Purpose of Securing: 1. Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension of renewal thereof, in the principal sum of $4,850,000.00 executed by Trustor in favor of Beneficiary or order.  3.  Payment of such further sums as the then record owner of such property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured. 4. All obligations under a Loan Agreement dated 6/29/2015 between 1550 BlueJay Way, LLC, a Delaware Limited Liability Company and Beneficiary.

A default under any other deed of trust securing the above-referenced promissory note shall constitute a default under this Deed of Trust as well.

## To Protect the Security of This Deed of Trust, Trustor Agrees:

(1) That Trustor will observe and perform said provisions; and that the referenced to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations and parties set forth in this Deed of Trust.

(2)  To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumeration's herein not excluding the general.

(3)  To provide and maintain in force at Trustor expense fire and extended coverage insurance in any amount of not less that the full replacement value of any building which may be exist on the subject property. Trustor shall within the same policy provide fire insurance protection on Trustor's furniture, fixtures and personal property on the subject real property in an amount equal to the full replacement value thereof, and promises that any insurance coverage in this regard will contain a waiver of the insurers' right of subrogation against Beneficiary. All insurance policies shall contain a standard non-contributory mortgage clause naming Beneficiary as first mortgagee and loss payee. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured herein and in such order as beneficiary may determined or at option of Beneficiary the entire amount so collected or any part hereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default herein under or invalidate any act done pursuant to such notice.

(4)  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to record this Deed.

(5)  To pay; at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or a part thereof, which appear to be prior to superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the

5561-011-013

022

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(6)   To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(7)   That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8)   That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(9)   That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may; reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(10) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property held hereunder.  The recitals in such RECONVEYANCE of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "The person or persons legally entitled thereto".  Five years after issuance of such full RECONVEYANCE, Trustee may destroy said Note and this Deed (unless directed in such request to retain them).

(11) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving until Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collected and retain such rents, issues and profits as they become due and payable.  Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonably attorney's fees, upon indebtedness secured hereby, and in such order as Beneficiary may determined.  The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(12) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall post it with Trustee this Deed said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required y law, Trustee without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determined, a public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale.  Trustee may postpone sale of all or a portion of said property by public announcement of such time and place of sale, and from time to time thereafter may postpone sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

(13) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in wiring, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the County or Counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.  Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(14) That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.  The term Beneficiary shall mean the owner and holder, including pledges of the note secured hereby whether or not named as Beneficiary herein.  In this Deed, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(15) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(16) Trustor shall, at Trustor's expense, maintain in force policies of liability insurance and, if applicable, flood insurance, with Beneficiary as an additional insured thereunder, insuring Trustor against all claims resulting from the injury to or the death of any person or the damage to or the destruction of any property belonging to any person by reason of Beneficiary's interest hereunder or the use and occupancy of the subject real property by Trustor.  Such insurance shall be in the following amounts: (1) $300,000 combined single limit liability insurance covering property damage and bodily injury; (2) flood insurance is required if the collateral is located in a flood zone equal to the replacement cost of the subject real property or up to $250,000, whichever is less. All insurance policies shall contain a standard non-contributory mortgage clause naming Beneficiary as first mortgagee and loss payee.

(17) If all or any part of the subject property or any interest in it is sold or transferred (or if a beneficial interest in Trustor is sold or transferred and Trustor is not a natural person), or a lien or encumbrance is created upon such property, voluntarily or involuntarily, or if Trustor shall file or have filed against it and/or the property any proceeding for relief of debtors under the United States Bankruptcy Code, without Beneficiary's prior written consent, Beneficiary may, at its option, require immediate payment in full of all sums secured by this Deed of Trust.  However, this option shall not be exercised by Beneficiary if exercise is prohibited by federal law as of the date of this Deed of Trust.  If Beneficiary exercises this option, Beneficiary shall give Trustor notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Deed of Trust.  If Trustor fails to pay these sums prior to the expiration of this period, Beneficiary may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

023

(18) Any default under this Deed of Trust shall constitute a default under all promissory notes and deeds of trust Trustor has executed in favor of Beneficiary.

(19) California law shall exclusively govern the enforcement and interpretation of this Deed of Trust.

The undersigned Trustor request that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Dated: _6/30/15_

Trustor: 1550 BlueJay Way, LLC, a Delaware Limited Liability Company

By: _____
Jeffrey Yohai, Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ~~California~~ NEW YORK, SS
County of ~~New York~~ New York

On June 30 2015 before me, STEVEN J. Czik A Notary Public (here insert name and title of officer), personally appeared JEFFREY YOHAI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

NY. S.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ NY.S. that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

STEVEN J. CZIK, ESQ.
NOTARY PUBLIC, State of New York
Registration No. 02CZ6006914
Qualified in New York County
Commission Expires on May 11, 2018

(This area for official notarial seal)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

024

PRELIMINARY REPORT
YOUR REFERENCE: 01-951543-CY

Fidelity National Title Company
ORDER NO.: 00095955-994-VNO-SI

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 45 OF TRACT NO. 19229, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 652, PAGES 34 TO 36 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5561-011-013

Plotted Map

CLTA Preliminary Report Form – Modified (11/17/06)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# LOAN AGREEMENT

*(Rehab, Trustee Sale and New Acquisition Loan Program)*

## *1550 Bluejay Way, West Hollywood Area, Los Angeles, CA 90069*

This is an agreement dated 6/29/2015 containing the terms that apply to your lending relationship ("Account") with Genesis Capital Master Fund III, LLC, a Delaware limited liability company, a California Finance Lender (60DBO-35928). The words "we" or "us" refer to the lender named in the previous sentence. The words "'you'" or "your" mean the person or persons who use or authorize the use of the Account, jointly and severally. "You" and "your" include your affiliates who give us deeds of trust to secure loans we make to or for such affiliates. This agreement applies and binds you and us as to all extensions of credit we make to you or your affiliates on or after the date of this agreement.

**1. Loans We Will Consider.** The following are the types of extensions of credit covered by this agreement (checked as applicable):

[  ] A. Property You Already Own. We may extend credit to you secured by real property you recently acquired and intend to immediately rehabilitate and resell. We will ask that you submit information to enable us to determine if your request for a loan meets our underwriting requirements. After you submit all information that we request, we will notify you how much we are prepared to lend, pricing and conditions. If you accept, we will ask you to sign a promissory note, deed of trust and other loan documents on the subject real property in favor of us.

[  ] B. Property You Intend to Acquire at a Foreclosure Sale. We may extend credit to you secured by real property you intend to acquire at a foreclosure sale that you intend to immediately rehabilitate, resell or refinance. We will ask that you submit information in advance of the foreclosure sale to enable us to determine if your request for loan meets our underwriting requirements. We will notify you if we approve your request for a loan and the amount or percentages we are willing to advance on a particular property, pricing and conditions. We will attend the foreclosure sale with you, but you will direct all bidding that takes place. If the bid price is higher than our pre-approved Cash Loan, you must pay the difference from your own funds at the sale. You must require the foreclosure trustee to vest the trustee's deed in our name even if you advance your own funds for a portion of the bid price. After we receive the trustee's deed, we will convey the property back to you in exchange for your executed deed of trust on the property and a promissory note for an amount equal to our Cash Loan. At the time of the transfer you will provide us with an endorsement to a suitable fire insurance policy naming us a loss payee or mortgagee.

[  ] C. Gap Loans. We may extend credit to you on real property you have just purchased at a trustee's sale but as to which you have not yet received the trustee's deed upon sale. We will ask that you submit information to enable us to determine if your request for a loan meets our underwriting requirements. We will notify you if we approve your request for a loan and the amount, pricing and conditions. If we approve your request we will ask you to sign a promissory note and deed of trust on the subject property in our favor and a three party instruction to the foreclosure trustee. We will record the trustee's deed upon receipt. If a trustee's sale is rescinded you promise that you will cause our advance to be repaid immediately. Upon receipt of our advance we will waive all fees except a $30.00 funding fee and our out of pocket costs.

[ X ] D. New Acquisitions. We may extend credit to you secured by real property you wish to acquire with the intent to resell during the term of the new loan. We will ask that you submit information to enable us to determine if your request for a loan meets our underwriting requirements. After you submit all information that we request, we will notify you how much we are prepared to lend, pricing and conditions. If you accept, we will ask you to sign a promissory note, deed of trust and other loan documents on the subject real property in favor of us.

**2. Cross-Default.** You agree that if you default under any promissory note or deed of trust you give us, we may consider and declare you to be in default under all unpaid notes and deeds of trust you have given us.

**3. Application of Payment.** We will determine the method of applying your payments and credits to the loans in your Account.

**4. Security.** All of your loans will be secured by deeds of trust on your real property collateral and improvements, as evidenced by deeds of trust. Each Deed of Trust allows us to declare a default if you sell or transfer your real property without our prior written consent. In the case of real property consisting of 1-4 family units, the deed of trust provides (you are the "Trustor," we are the "Beneficiary," and the "Property" is your real property in the following quotation):

If all or any part of the subject property or any interest in it is sold or transferred (or if a beneficial interest in Trustor is sold or transferred and Trustor is not a natural person), or a lien or encumbrance is created upon such property, voluntarily or involuntarily, or if Trustor shall file or have filed against it and/or the property any proceeding for relief of debtors under the United States Bankruptcy Code, without Beneficiary's prior written consent, Beneficiary may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Beneficiary if exercise is prohibited by federal law as of the date of this Deed of Trust. If Beneficiary exercises this option, Beneficiary shall give Trustor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Deed of Trust. If Trustor fails to pay these sums prior to the expiration of this period, Beneficiary may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

Provided you are not in default under this Agreement, we will reconvey any deed of trust for an amount equal to the amount advanced to you in connection with the loan secured by that deed of trust.

026

**5. Transfer of Account.** You cannot transfer or assign your Account to any other person.

**6. Change of Address.** You agree to advise us promptly if you change your mailing address. All written notices and statements from us to you will be considered given when placed in the United States mail, postage prepaid, and addressed to you at your current address as it appears in our records.

**7. Irregular Payments.** We may accept late payments or partial payments or checks, drafts or money orders marked "Payment in Full" without losing any of our rights under this Agreement.

**8. Amendments.** We may make insignificant changes to this Agreement at any time or changes that unquestionably benefit you, as long as we give you advance written notice as required by law.

**9. Cancellation.** You can cancel your Account at any time by giving us notice and paying in full all sums due on your loans. Your obligation under this Agreement, including our security interest in your real property, and any changes made under this Agreement prior to cancellation will continue to apply until you have paid you all the money you owe.

**10. Indemnification.** To the full extent allowed by California and Federal law, as applicable, you hereby promises to timely, fully and immediately indemnify us and to hold us harmless from any liability, fine, fee, cost, expense, legal fees (of counsel chosen by us), judgment or other liability or expense arising from: (a) any real property we have financed, (b) your business activities, (c) any claim, lawsuit, demand or other assertion by a borrower, regulatory agency, or third party in any way connected with you business activities. Borrower shall pay and advance Lender's expenses pending the adjudication of the subject of indemnification. Your obligation under this paragraph shall survive the repayment of all loans you obtain from us.

**11. Loan Repurchase.** Within ten (10) days of our written demand, you shall fully repay all amounts owed to us as to any real property that is the subject of an indemnification claim as defined in paragraph 10. Your failure to do so shall be an event of default under all loans outstanding between you and us. Any amount that is not paid when due shall bear interest at the rates set forth in the promissory note for the applicable loan or loans. You shall immediately notify us of any claim that is made or threatened by any borrower, regulatory agency or third party in connection with any real property we have financed.

**12. Other Provisions.** Each of you who signed this Agreement or use the Account is individually and jointly obligated for all payments due under this agreement. The Account has been applied for, considered, approved and issued in the State of California and all extensions of credit are being made from the State of California. If any part of this agreement is not valid, all other parts will remain enforceable.

**13. Business Credit.** You hereby confirm your representation to us that no loans under this agreement are intended to be used or shall be used for other than business (non-consumer) purposes). You agree that no individual borrower or guarantor, and no principal of an entity borrower or guarantor, and no family member of any of the foregoing, shall occupy any real property securing any loan we make to you. You may have employees, security personnel and other persons temporarily occupy such property for the purposes of securing it, but no one shall occupy the property as their principal residence while you own it.

**14. Financial Data.** Not more often than annually, you shall provide to us on our request a copy of your federal income tax returns, balance sheet, profit and loss, as applicable for the prior tax year.

**15. Credit Authorization.** You hereby provide a continuing authorizing to us to obtain credit reports on your credit. In addition, a photocopy of this agreement shall constitute your irrevocable authorization and direction to any bank at which you have an account to provide copies of your bank statements, cancelled checks and deposits slips on all accounts you have at that bank.

**16. Loan Extension.** In our absolute discretion we may allow you to extend your loan in up to two, 3 month extension periods if you request it. If we are inclined to grant an extension, we will notify you. In the absence of such notice you should assume your loan is due on the Maturity Date set forth in your Note. We are very unlikely to consider an extension if:

> You have at any time defaulted under the Note, the Deed of Trust or any other Loan Document in the payment of principal,
> interest, taxes, insurance premiums, loan costs, and or you have been consistently late in the making of such payments, or fees,
> and or in the performance of the terms, conditions, and covenants of the Note, Deed of Trust and any other Loan Document.

If we extend your loan we will charge you a loan extension fee equal to 1.00% of the original principal balance of the Loan per extension period, for the negotiation and arrangement of the loan extension. You must also execute a Loan Modification Agreement on our form. As a condition of extension, we may ask you to prepay interest for the entire period of the extension.

**17. Choice of Law.** California law shall govern this Agreement, all promissory notes you give us, all deeds of trust you give us, all guarantees you provide to us and all other agreements between us as well as all aspects of our business relationship.

**18. Patriot Act.** The USA Patriot Act of 2001 (Public Law 107-56) and federal regulations issued with respect thereto require all financial institutions to obtain, verify and record certain information that identifies individuals or business entities which open an "account" with such financial institution. Consequently, we may from time-to-time request, and you shall provide to us, your name, address, tax identification number and/or such other identification information as shall be necessary for us to comply with federal law.

By signing below, you agree to all of the above terms and conditions and certify that you have received a completed copy of this Agreement.

Trustor: 1550 BlueJay Way, LLC,
     a Delaware Limited Liability Company

Lender: Genesis Capital Master Fund III, LLC,
     a Delaware limited liability company,
     a California Finance Lender ( 60DBO-35928)

By: _____
     Jeffrey Yohai Manager

By: _____
     Its: PRESIDENT

Date: _____

## GUARANTY
### 1550 Bluejay Way, West Hollywood Area, Los Angeles, CA 90069

The undersigned (hereinafter referred to as "Guarantors") hereby request and authorize Genesis Capital Master Fund III, LLC, a Delaware limited liability company, a California Finance Lender (60DBO-35928) located at 21650 Oxnard Street, Suite 1700, Woodland Hills, CA 91367 (hereinafter referred to as the "Creditors") to extend credit to 1550 BlueJay Way, LLC, a Delaware Limited Liability Company (hereinafter referred to as "Debtor"), and in consideration of the granting of such credit by the Creditors to Debtor, Guarantors hereby agree as follow:

1.      The words "indebtedness" and "credit" are used herein in their most comprehensive sense and include any and all advances, debts, obligations, and liabilities, including interest thereon, of Debtor heretofore, now or hereafter made, incurred or created, with or without notice to Guarantors, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Debtor is liable individually or jointly with others, and whether recovery upon any such indebtedness or credit is or hereafter becomes barred by any statute of limitations or is or hereafter becomes otherwise unenforceable.

[  ]  [  ] If the foregoing box is initialed by both Creditor and Debtor, this Guaranty is limited to those loans or advances of credit made by Creditor after a Debtor has successfully acquired a real property at foreclosure sale but has not yet received the trustee's deed upon sale.

2.      Credit may be granted from time to time at the request of Debtor and without further authorization from or notice to Guarantors even though Debtor's financial condition may have deteriorated since the date hereof. If Debtor is a corporation or a partnership, Creditors need not inquire into the power of Debtor or the authority of its officers, directors, partners or agents acting or purporting to act in its behalf. Each credit heretofore or hereafter granted to Debtor shall be considered to have been granted at the special instance and request of Guarantors and in consideration of and in reliance upon this Guaranty.

3.      Guarantors hereby guarantee and promise to pay to Creditors or its order any and all indebtedness of Debtor to Creditors and to perform any and all obligations of Debtor under the terms of any instrument evidencing or securing any such indebtedness, including, but not limited to a promissory note (the "Note") in the original principal amount of **$4,850,000.00** given by Debtor to Creditors. The liability of undersigned hereunder shall not at any time exceed the sum of the amount set forth below in paragraph 17, plus the interest thereon and the costs, attorneys' fees and other expenses provided for in this agreement. If no amount is set forth in paragraph 17, the liability of the Guarantors hereunder shall be unlimited. Creditors may permit Debtor's indebtedness to exceed any maximum liability without impairing the obligations of Guarantors hereunder. No payments made by or on behalf of Guarantors to Creditors shall reduce any such maximum liability unless written notice to that effect is received by Creditors at or prior to the time such payment is made. If Guarantors have executed more than one guarantee of the indebtedness of Debtor to Creditors, the guarantees shall be cumulative.

4.      Either before or after revocation hereof and in such manner, upon such terms and at such times as it considers best and with or without notice to Guarantors, Creditors may alter, compromise, accelerate, extend or change the time or manner for the payment of any indebtedness hereby guaranteed, increase or reduce the rate of interest thereon, release or add any one or more guarantors or endorsers, accept additional or substituted security therefor, or release or subordinate any security therefor. No exercise or non-exercise by Creditors of any right hereby given it, no dealing by Creditors with Debtor or any other person, and no change, impairment or suspension of any right or remedy of Creditors shall in any way affect any of the obligations of Guarantors hereunder or any security furnished by Guarantors or give Guarantors any recourse against Creditors.

5.      Guarantors waive and agree not to assert or take advantage of (a) any right to require Creditors to proceed against the Debtor or any other person, firm or corporation or to proceed against or exhaust any security held by it at any time or to pursue any other remedy in its power; (b) the defense of the statute of limitations in any action hereunder or for the collection of any indebtedness guaranteed hereby; (c) any defense that may arise by reason of the incapacity, lack of authority, death or disability of, or revocation hereof by, any other or others, or the failure of Creditors to file or enforce a claim against the estate (either in administration, bankruptcy, or other proceeding) of any other or others; (d) demand, protest and notice of any kind including, without limiting the generality of the foregoing, notice of the existence, creation or incurring of new or additional indebtedness or of any action or non-action on the part of the Debtor, Creditors, any endorser, creditor of Debtor or Guarantors under this or any other instrument, or any other person whomsoever, in connection with any obligation or evidence of indebtedness held by Creditors as collateral or in connection with any indebtedness hereby guaranteed; (e) any defense based upon an election of remedies by Creditors, including without limitation, an election to proceed by nonjudicial rather than judicial foreclosure, which election destroys or otherwise impairs subrogation rights of Guarantors (and may waive immunity to a deficiency judgment) or the right of Guarantors to proceed against Debtor for reimbursement, or both, including, without limitation, any defense based upon an election of remedies by Creditors under the provisions of Section 580d and 726 of the California Code of Civil Procedure and/or any similar law of California or of any other jurisdiction; and (f) any duty upon the part of Creditors to disclose to Guarantors any facts that it may now or hereafter know about Debtor, regardless of whether

1                                    **Guarantors Initial Page Here: [  ] [  ]**

029

Creditors have reason to believe that any such facts materially increase the risk beyond that which Guarantors intend to assume or have reason to believe that such facts are unknown to Guarantors or have a reasonable opportunity to communicate such facts to Guarantors, it being understood and agreed that Guarantors are fully responsible for being and keeping informed of the financial condition of Debtor and of all circumstances bearing on the risk of non-payment of any indebtedness hereby guaranteed. Guarantors waive all rights and defenses arising out of an election of remedies by the Creditors, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Guarantors' rights of subrogation and reimbursement against the principal by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Without in any way limiting the foregoing, or any other provision of this Guaranty, the undersigned Guarantors agree that nothing contained in this Guaranty shall prevent Creditors from suing under the Note or from exercising any rights available to them under the Note or under any of the other loan and security agreements executed by Debtor to Creditors, and that the exercise of any of these rights shall not constitute a legal or equitable discharge of Guarantors. Guarantors understand that the exercise by Creditors of certain rights and remedies contained in the Note and security agreements securing the Note may affect or eliminate Guarantors' right of subrogation against Debtor and that Guarantors may therefore succeed to a partially or totally non-reimbursable liability hereunder. Nevertheless, Guarantors hereby authorize and empower Creditor to exercise, in its sole discretion, any rights and remedies, or any combination of rights and remedies that may then be available, since it is the intent and purpose of Guarantors that the obligations hereunder shall be absolute, independent, and unconditional under any and all circumstances. Without limiting the generality of the foregoing, Guarantors expressly waive any and all benefits under California Civil Code Sections 2809, 2810, 2819, 2845, 2849, 2850 and 2855 of the California Code of Civil Procedure Sections 580a, 580b, 580d and 726. Guarantors understand that each have a defense to a deficiency judgment under California Code of Civil Procedure Section 580d should Creditors elect to pursue nonjudicial foreclosure remedies, and each Guarantor expressly waives any and all benefits of any defense to a deficiency judgment should Creditors elect to exercise their nonjudicial foreclosure remedies (including waiver of any Guarantors' defense under Section 580d).

6.     Until such indebtedness of Debtor to Creditors has been paid in full, even though such indebtedness is in excess of the liability of Guarantors hereunder, Guarantors shall have no right of subrogation and waive any right to enforce any remedy which Creditors now have or may hereafter have against Debtor and any benefit of, and any right to participate in, any security now or hereafter held by Creditors.

7.     Guarantors will file all claims against Debtor in any bankruptcy or other proceeding in which the filing of claims is required by law upon any indebtedness of Debtor to Guarantors and will assign to Creditors all of the rights of Guarantors thereunder. If Guarantors do not file any such claim, Creditors, as attorney-in-fact for Guarantors, are hereby authorized to do so in the name of Guarantors or, in the discretion of Creditors, to assign the claim and to cause proof of claim to be filed in the name of the nominee of Creditors. In all such cases, whether in administration, bankruptcy or otherwise, the person or persons authorized to pay such claim shall pay to Creditors the full amount thereof and, to the full extent necessary for the purpose, Guarantors hereby assign to Creditors all of the rights of Guarantors to any such payments or distributions to which Guarantors would otherwise be entitled. If the amount so paid is greater than the guaranteed indebtedness then outstanding, Creditors will pay the amount of the excess to the person entitled thereto.

8.     With or without notice to Guarantors, Creditors, in their sole discretion and at any time and from time to time either before or after delivery of any notice of revocation hereunder and in such manner and upon such terms as it considers fit may (a) apply any or all payments or recoveries from Debtor, from Guarantors or from any other guarantor under this or any other instrument or realized from any security, in such manner and order or priority as Creditors wish, to any indebtedness of Debtor to Creditors, whether or not such indebtedness is guaranteed hereby or is otherwise secured or is due at the time of such application; and (b) refund to Debtor any payment received by Creditors upon any indebtedness hereby guaranteed and payment of the amount refunded shall be fully guaranteed hereby. Any recovery realized from any other guarantor under this or any other instrument shall be first credited upon that portion of the indebtedness of Debtor to Creditors which exceeds the maximum liability of Guarantors, if any, hereunder.

9.     The amount of the liability of Guarantors and all rights, powers and remedies of Creditors hereunder and under any other agreement now or at any time hereafter in force between Creditors and Guarantors shall be cumulative and not alternative and such rights, powers and remedies shall be in addition to all rights, powers and remedies given to Creditors by law.

10.    The obligations of Guarantors hereunder are independent of the obligations of Debtor and, in the event of any default hereunder, separate action or actions may be brought and prosecuted against Guarantors whether action is brought against Debtor or whether Debtor joined in any such action or actions. Creditors may maintain successive actions for other defaults. Their rights hereunder shall not be exhausted by their exercise of any of their rights or remedies or by any such action or by any number of successive actions until and unless all indebtedness and obligations hereby guaranteed have been paid and fully performed.

2                          **Guarantors Initial Page Here:** 〔Ŋ Ŋ〕

11.   This is a continuing guarantee and Guarantors agree that it shall remain in full force until and unless Guarantors deliver to Creditors written notice that it has been revoked as to credit granted subsequent to the effective time of revocation as herein provided.  Delivery of such notice shall be effective by personal service upon Creditors, or by mailing such notice by personal service upon Creditors, or by mailing such notice by certified or registered mail, return receipt requested, postage prepaid and addressed to Creditors.  Regardless of how notice of revocation is given it shall not be effective until twelve o'clock noon Pacific Standard or Daylight Saving Time, as the case may be, on the next succeeding business day following the day such notice is delivered; but delivery of such notice shall not affect any of the obligations of Guarantors hereunder with respect to credit extended prior to the effective date of such revocation nor shall it affect any of the obligations of any other guarantor for the credit granted to Debtor hereunder.

12.   Guarantors agree to pay to Creditors without demand reasonable attorneys' fees and all costs and other expenses which Creditors expend or incur in collecting or compromising any indebtedness of the Debtor or in enforcing this Guaranty against Guarantors or any other guarantor of any indebtedness hereby guaranteed whether or not suit is filed.  Guarantors warrant and represent that they are fully authorized by law to execute this Guaranty.

13.   This Guaranty shall benefit Creditors, their successors and assigns, including the assignees of any indebtedness hereby guaranteed, and bind the successors and assigns of Guarantors.  This Guaranty is assignable by Creditors with respect to all or any portion of the indebtedness and obligations guaranteed hereunder, and when so assigned Guarantors shall be liable to the assignees under this Guaranty without in any manner affecting the liability of Guarantors hereunder with respect to any indebtedness or obligations retained by Creditors.

14.   No provision of this Guaranty or right of Creditors hereunder can be waived nor can any guarantor be released from his obligations hereunder except by a writing duly executed by Creditors.  Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions nevertheless shall be effective.  This Guaranty shall be governed by and construed in accordance with the laws of California, to the jurisdiction of whose courts the Guarantors agree to submit.

15.   If more than one guarantor signs this Guaranty, the obligation of all such guarantors shall be joint and several.  When the context and construction so require, all words used in the singular shall be deemed to have been used in the plural and the masculine shall include the feminine and neuter.  Any married person who signs this Guaranty agrees that recourse may be had against separate property for all obligations under this Guaranty.

16.   Except as provided in any other written agreement now or at any time hereafter in force between Creditors and the Guarantors, this Guaranty shall constitute the entire agreement of the Guarantors with Creditors with respect to the subject matter hereof and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon Creditors unless expressed herein.

17.   The maximum liability of Guarantors to Creditors hereunder shall be **UNLIMITED**.

IN WITNESS WHEREOF, the undersigned have caused this Guaranty to be executed and delivered as of the date or dates written hereinbelow.

**Guarantors: Jeffrey Yohai**

| _____ | _____ |
|---|---|
| Name and Title | Date |
| _____ | _____ |
| Name and Title | Date |

**Guarantors Initial Page Here:** ⟦JY⟧

Guarantors Initial Page Here: [ ]

Genesis Capital Mortgage

Page 1 of 4

# EXHIBIT B



ABOUT
ABOUT MARIN WEST (/NEW-PAGE/)
OUR TEAM (/NEW-PAGE-2/)
PORTFOLIO (/NEW-INDEX-1/)
PROJECTS
1550 BLUE JAY WAY (/BLUEJAYWAY-1/)
2521 NOTTINGHAM AVENUE (/UPPER/)
2401 NOTTINGHAM AVENUE (/2401/)
779 STRADELLA ROAD (/7-CLIFFSIDE-DRIVE-1/)

CONTACT (/NEW-INDEX/)



ABOUT
ABOUT MARIN WEST (/NEW-PAGE/)
OUR TEAM (/NEW-PAGE-2/)
PORTFOLIO (/NEW-INDEX-1/)
PROJECTS
1550 BLUE JAY WAY (/BLUEJAYWAY-1/)
2521 NOTTINGHAM AVENUE (/UPPER/)
2401 NOTTINGHAM AVENUE (/2401/)
779 STRADELLA ROAD (/7-CLIFFSIDE-DRIVE-1/)

CONTACT (/NEW-INDEX/)



# 1550 BLUE JAY WAY

## West Hollywood



(/bluejayway-1)

035

**V I E W   P R O J E C T   ( / B L U E J A Y W A Y - 1 )**



2521 NOTTINGHAM AVENUE

Los Feliz

Case 8:16-bk-15171-CB   Doc 40   Filed 02/01/17   Entered 02/01/17 19:26:57   Desc
Main Document     Page 38 of 67



(/2401-1)

VIEW PROJECT (/UPPER)

038

Case 8:16-bk-15171-CB    Doc 40    Filed 02/01/17    Entered 02/01/17 19:26:57    Desc
            Main Document        Page 39 of 67



(/2401)

VIEW PROJECT (/2401)



039

Case 8:16-bk-15171-CB    Doc 40    Filed 02/01/17    Entered 02/01/17 19:26:57    Desc
Main Document    Page 40 of 67

# 779 STRADELLA ROAD

## Bel Air



(/7-cliffside-drive-1)

040

**VIEW PROJECT (/7-CLIFFSIDE-DRIVE-1)**

041

# EXHIBIT C

1

2                        UNITED STATES BANKRUPTCY COURT

3                        CENTRAL DISTRICT OF CALIFORNIA

                                  --oOo--
4

   In Re:                           )  Case No. 8:16-bk-15156-CB
5                                    )
   779 STRADELLA, LLC, a            )  Chapter 11
6  Delaware Limited Liability       )
   Company,                          )  Santa Ana, California
7                                    )  Wednesday, January 11, 2017
                                     )  10:00 a.m.
8            Debtor,                 )
   _____)
9                                    )  Case No. 8:16-bk-15157-CB
   MT. YOHAI, LLC, a Delaware       )
10 Limited Liability Company,        )
                                     )
11           Debtor,                 )
   _____)
12                                    )  Case No. 8:16-bk-15171-CB
   1550 BLUE JAY WAY, LLC,          )
13 a Delaware Limited Liability     )
   Company,                          )
14                                    )
             Debtor,                 )
15 _____)
                                     )  Case No. 8:16-bk-15243-CB
16 2401 NOTTINGHAM, LLC, a          )
   Delaware Limited Liability       )
17 Company,                          )
                                     )
18           Debtor.                 )
   _____)
19
                             SCHEDULING AND CASE MANAGEMENT
20                           CONFERENCE

21

22                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE CATHERINE BAUER
                  UNITED STATES BANKRUPTCY JUDGE
23

24

   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

```
                                                              ii
 1  APPEARANCES:

 2  For the Debtors:              MARC C. FORSYTHE, ESQ.
                                  Goe & Forsythe, LLP
 3                                18101 Von Karman Avenue
                                  Suite 1200
 4                                Irvine, California  92612
                                  (949) 798-2460
 5
    For Genesis Capital:          JASON POMERANTZ, ESQ.
 6                                Pachulski, Stang, Ziehl
                                    & Jones, LLP
 7                                10100 Santa Monica Boulevard
                                  13th Floor
 8                                Los Angeles, California  90067
                                  (310) 277-6910
 9
    For the United States         MICHAEL J. HAUSER, ESQ.
10    Trustee:                    411 West Fourth Street
                                  Suite 7160
11                                Santa Ana, California  92701
                                  (714) 338-3400
12
    For Greenberg, Glusker        BRIAN L. DAVIDOFF, ESQ.
13    Claman & Machtinger,        Greenberg, Glusker, Fields,
      LLP                           Claman & Machtinger, LLP
14                                1900 Avenue of the Stars
                                  21st Floor
15                                Los Angeles, California  90067
                                  (310) 553-3610
16
    For R.S. Lending, Inc.:       JENNIFER E. NIEMANN, ESQ.
17                                Felderstein, Fitzgerald,
                                    Willoughby & Pascuzzi, LLP
18                                400 Capitol Mall, Suite 1750
                                  Sacramento, California 95814
19                                (916) 329-7400

20  Court Recorder:              Sally Daniels
                                 United States Bankruptcy Court
21                               411 West Fourth Street
                                 Santa Ana, California  92701
22
    Transcriber:                 Shonna D. Mowrer
23                               Echo Reporting, Inc.
                                 4455 Morena Boulevard
24                               Suite 104
                                 San Diego, CA 92117
25                               (858) 453-7590
```

*Briggs Reporting Company, Inc.*

1

1    SANTA ANA, CALIFORNIA  WEDNESDAY JANUARY 11, 2017 10:00 A.M.

2                          --oOo--

3        (Call to order of the Court.)

4            THE COURT:  I'm going to call my new Chapter 11s,

5    Number 14, 779 Stradella, LLC.  Number 16, 1550 Blue Jay

6    Way.  Number 17, 2401 Nottingham.  Did I get four there?

7            MR. HAUSER:  Yes, four.

8            THE COURT:  That was four?

9            MR. HAUSER:  Yes.

10           THE COURT:  Did I miss one?

11           MR. HAUSER:  Yeah, Mt. --

12           THE COURT:  Number 15 is Mt. Yohai?

13           MR. HAUSER:  Mt. -- exactly.

14           THE COURT:  Okay.  Great.

15           MR. FORSYTHE:  Good morning, your Honor.  Marc

16   Forsythe, proposed counsel for all the Debtors.

17           THE COURT:  Thank you.

18           MR. POMERANTZ:  Good morning, your Honor.  Jason

19   Pomerantz, Pachulski, Stang, Ziehl & Jones on behalf of

20   Genesis Capital.

21           MR. HAUSER:  Good morning, your Honor.  Michael

22   Hauser for the U.S. Trustee.

23           THE COURT:  Great.  Thank you.  It's our first

24   status conference on all these matters.

25           MR. DAVIDOFF:  Your Honor, if I can just appear.

2

1          MS. NIEMANN (Telephonic):  Your Honor --

2          THE COURT:  Oh, I'm sorry.  We have folks on the

3   phone.  I'm sorry.  Sometimes I ignore you.  Go ahead.

4          MR. DAVIDOFF (Telephonic):  Thank you, your Honor.

5   This is Brian Davidoff on behalf of DJ Blue Jay Way, LLC,

6   which is in connection with Matter Number 16.

7          THE COURT:  Great.  Thank you.

8          MS. NIEMANN:  Good morning, your Honor.  This is

9   Jennifer Niemann on behalf of R.S. Lending, Inc. in Number

10   16, 1550 Blue Jay Way, and Number 17, 2401 Nottingham.

11          THE COURT:  All right.  Great.  Thank you so much.

12          So how goes it?

13          MR. FORSYTHE:  Good morning, your Honor.  Well,

14   we've been active in these cases.  And Mr. Jeff Yohai is the

15   principal for all the Debtors.  The cases were filed.  He's

16   had some medical issues, and glad to report that he's --

17   he's over those issues and will be appearing for his IDI

18   next Tuesday.

19          The medical issues have made it very difficult on

20   my firm to comply with U.S. Trustee requirements.  We've

21   done our best.  I've been in constant communication with the

22   U.S. Trustee's Office.  We definitely have more stuff --

23   more work to do to get in compliance.

24          There's no cash collateral issues with these

25   properties.  There's two major lenders, both Genesis 2 and 3

3

1  type funds, both represented by the same counsel.  We have

2  an outside investor who has been in several settlement

3  discussions with Genesis.  It's -- I can't say there's a

4  settlement yet.  It's sometimes hot and cold.

5        But as of today, I understand from Mr. Pomerantz,

6  we're -- we're at a point where we're looking for a little

7  more time in relation -- as opposed to the -- I think the

8  statement filed by Mr. Pachulski and Mr. Dulberg asking for

9  an OSC on a SAR determination, which I don't think we're

10 going to request today, but I can address that if that's

11 where we go.

12        In looking at these properties, they're all going

13 to require new value, obviously.  The assets are the

14 properties.  And the outside investors, in conjunction with

15 Mr. Yohai, have been seriously looking at all these

16 properties, and I can tell you that they're not dreamers.

17 They've concluded that the 2401 Nottingham case, we'll be

18 seeking to dismiss that and give it back to the lender.

19 It's not a property that we can make work.  But their three

20 properties show significant hope, and we're hoping we can

21 work out a deal with the lender.

22        And that's kind of where we're at, your Honor.

23        THE COURT:  All right.

24        MR. FORSYTHE:  And I'll let Mr. Pomerantz and Mr.

25 Hauser chime in.

4

1          MR. POMERANTZ:  Good morning, your Honor.  I guess

2   with respect to the case that Mr. Forsythe talked about

3   seeking to dismiss, the 2401, is that -- is there a

4   reason -- is there any reason not to -- we're in support of

5   that so we can continue the foreclosure proceedings.

6          THE COURT:  Uh-huh.

7          MR. POMERANTZ:  Is there any reason not to dismiss

8   that today?

9          MR. FORSYTHE:  There'd be no problem other than

10  just -- I believe there's some other creditors, your Honor.

11  I apologize.  I think there are other creditors at 2401

12  Nottingham that might require notice.  I don't mind doing it

13  on a shortened notice basis, but I -- the Debtor consents to

14  it.  Or shortened notice.  I just -- I would just be

15  concerned about any kind of due process concerns.

16         THE COURT:  Well, I mean, I think we could do it

17  here.  I mean, what kind of creditors are we talking?

18         MR. FORSYTHE:  Very minor --

19         THE COURT:  I mean, they're all --

20         MR. FORSYTHE:  Very minor creditors, your Honor.

21         THE COURT:  -- junior to the -- you're the first,

22  right?

23         MR. POMERANTZ:  We are, your Honor.

24         MR. FORSYTHE:  They'd be unsecured creditors, your

25  Honor.

5

1          THE COURT:  They're unsecureds?

2          MR. FORSYTHE:  Yeah.

3          MR. POMERANTZ:  I just don't see the reason --

4          THE COURT:  I don't see the reason that we'd have

5    to give notice to dismiss it.

6          MR. FORSYTHE:  Okay.  Okay.  That's fine, your

7    Honor.  I'm --

8          THE COURT:  Okay.  So we're going to go ahead

9    and -- you're making an oral motion to dismiss?

10          MR. FORSYTHE:  Yes, your Honor.

11          THE COURT:  And that's on Number 17.  I'm

12    getting -- is that going to cause a problem?  No.  Good.  I

13    didn't think it would cause a problem.  So Number 17 with an

14    oral motion to dismiss, I'm going to grant that.  And then

15    the creditor can go forward with its remedies.

16          So if you could upload an order, Mr. Forsythe.

17          MR. FORSYTHE:  Yes, your Honor.

18          THE COURT:  That would be great.  Thanks.

19          MR. FORSYTHE:  Do you want me to run it by Mr.

20    Pomerantz at all?  It would be pretty simple.

21          MR. POMERANTZ:  You could just send it to myself

22    and Mr. Dulberg.

23          MR. FORSYTHE:  Okay.

24          MR. POMERANTZ:  We'll take a quick look.  I'm sure

25    it's going to be pretty generic.

6

1          THE COURT:  Yeah.

2          MR. FORSYTHE:  Yes.

3          THE COURT:  All right.  So that takes care of

4   Nottingham.

5          MR. POMERANTZ:  That does, your Honor.

6          With respect to the other three, as we said in our

7   reservation of rights pleading and as Mr. Forsythe alluded

8   to, we are concerned that these may be single-asset real

9   estate cases.  And if so, as the Court is well aware, if

10  they are designated as such, there's a whole different time

11  line.

12         And although the cases were filed, I believe, at

13  the end of -- at the end of the calendar year last year, you

14  know, if they are going to be single-asset real estate

15  cases, then we need to know that so that we can comply --

16  the Debtor can comply with the requirements and we know what

17  kind of time frame we're on.

18         I would -- we are in settlement discussions

19  with -- with the various representatives of the Debtor -- of

20  the Debtors, and we are hoping that we can come to a

21  consensual resolution.  However, I think it is in the best

22  interest of the Court as well as the parties involved that

23  we set a hearing on an OSC with respect to the SAR

24  designation so that if those settlement discussions --

25  regardless, so that we will know before that 90-day period

7

1  expires whether they're designated SAR cases or not.

2           I would request that the Court set a hearing on an

3  OSC four or five weeks out, maybe the week of February 13th,

4  have papers filed two weeks prior.  That would give -- and

5  then any responses or replies one week prior to the hearing.

6  That would give the parties another two or three weeks

7  before any papers needed to be filed to try to reach a

8  resolution.

9           And then we would just file the papers well in --

10 so the Court would make that determination with

11 approximately 30 more days before that 90-day period would

12 expire.

13          THE COURT:  I'm not used to creditors asking me to

14 set OSCs.  I'm used to a motion being filed.  I set OSCs.

15 So that's a little unusual.

16          I'd like to hear from Mr. Forsythe whether --

17          MR. FORSYTHE:  Thank you, your Honor.  I was going

18 to --

19          THE COURT:  -- these are SARs.

20          MR. FORSYTHE:  I apologize, your Honor.

21          I was going to address that.  I -- like I said,

22 this has gone hot and cold, so I didn't think we were going

23 to go there.  But now that we are there --

24          THE COURT:  Uh-huh.

25          MR. FORSYTHE:  -- completely improper.  First of

8

1  all, it's their burden to prove a SAR motion.  So for this

2  Court to say an order to show cause, you're basically trying

3  to put the burden on us to prove that we are not a SAR.

4  That's not the case law.

5          Second of all, local bankruptcy rules require a

6  noticed motion.  Why did this Court need to set a hearing?

7  He can go file the motion tomorrow.  That's fine.  Go do it.

8  But that's not what the local bankruptcy rules say.

9          THE COURT:  Okay.

10         MR. FORSYTHE:  It's not providing me due process.

11         THE COURT:  Just talk about why they're not

12  single-asset.  Can you --

13         MR. FORSYTHE:  They're all single -- single-family

14  residences, your Honor.

15         THE COURT:  One is vacant land.

16         MR. FORSYTHE:  One --

17         THE COURT:  The plan is for it to be single-

18  family.

19         MR. FORSYTHE:  Yeah.  Right.  And so there's

20  plenty of arguments here.  Intent -- I've literally read

21  every SAR case there is last night, your Honor, every one of

22  them.  I did not see one case that deals with -- you can

23  basically look at these -- and I do not know they are, but

24  home-flippers.  You buy a home, you buy a residential home,

25  you fix it up, and you sell it.  It doesn't work out, you

9

1    file bankruptcy.  That's not a single-asset real estate

2    case.

3          These are all single-family residences.  I feel

4    very unarmed here by giving -- be given a statement filed

5    two days before a status conference.  It's not evidence.

6          THE COURT:  Yeah, well, don't worry about it.  I'm

7    not going to set an OSC.

8          MR. FORSYTHE:  Okay.

9          THE COURT:  Because it should have been done by a

10   motion.

11         MR. FORSYTHE:  Thank you, your Honor.

12         THE COURT:  I set OSCs.

13         MR. FORSYTHE:  Thank you, your Honor.

14         THE COURT:  Yeah.

15         MR. FORSYTHE:  But I think --

16         THE COURT:  And I understand what you're saying.

17   There is an issue here.  It's not clear-cut at all.

18         MR. FORSYTHE:  Yeah.  And so I would like the

19   opportunity to brief it.  I think it's completely

20   improper --

21         THE COURT:  I think it's interesting, yeah.  No.

22   I agree with you.

23         MR. FORSYTHE:  So that's my position, your Honor.

24         THE COURT:  Okay.  If you want to bring a motion,

25   then we can -- then we can look at the case law and -- you

10

1 know, it's not a commercial property.  I mean, it's like a

2 commercial enterprise, but they're each single-family

3 residences.  Yeah.

4          MR. FORSYTHE:  There's a slew of cases -- there's

5 actually a case Meruelo in 2009, your Honor, dealing -- a

6 much larger situation with 52 parcels, multiple -- it can be

7 a very complex area, your Honor, and it really requires full

8 briefing on the issue.

9          THE COURT:  No.  It's interesting.  Where was that

10 out of, what circuit?

11          MR. FORSYTHE:  Central District.

12          THE COURT:  Oh, Central District.

13          MR. FORSYTHE:  Yeah.

14          THE COURT:  Oh, downtown?

15          MR. FORSYTHE:  Yes.  It's -- I have a copy of it

16 right here, your Honor.  I apologize, your Honor.  It's

17 Meruelo.  It's -- I think Thompson was the judge that wrote

18 the opinion.

19          THE COURT:  Okay.  It's out of the valley, huh?

20          MR. FORSYTHE:  Yes.

21          THE COURT:  I can find it if you don't want to

22 send it.

23          MR. FORSYTHE:  Yeah.  It's -- yeah, there it is.

24 In Re Meruelo Maddux Properties, 667 Fed.3d 1072.  A Ninth

25 Circuit 2012 case.

11

1          THE COURT:  667 Fed.3d.  What was the rest of

2    that?  I'm sorry.

3          MR. FORSYTHE:  I apologize.

4          THE COURT:  You're too fast for me.

5          MR. FORSYTHE:  667 Fed.3d 1072.

6          THE COURT:  What year was it?

7          MR. FORSYTHE:  Ninth Circuit, 2012.

8          THE COURT:  This is an interesting issue.

9          MR. FORSYTHE:  Yes.

10          MR. POMERANTZ:  We'll go ahead and file a motion,

11    your Honor.

12          THE COURT:  Okay.  Great.

13          MR. POMERANTZ:  We understand.

14          The only thing I would say is, assuming we can get

15    the motion filed sometime by the end of next week, should we

16    pick a date now?  Should we just use your self-calendaring?

17          THE COURT:  Just use the self-calendaring.

18          MR. POMERANTZ:  It's up to you.

19          THE COURT:  Yeah.

20          MR. POMERANTZ:  Okay.

21          THE COURT:  Just use the self-calendaring.

22          All right.  How about the UST?  What do you think?

23          MR. HAUSER:  As Mr. Forsythe indicated, we were

24    supposed to have the IDI the day before this hearing so we

25    could inform the Court, but the principal is ill, so we

12

1  kicked it over to next week.

2      We did get a little compliance.  Probably the most

3  important piece was the real property questionnaires.  I'm

4  still trying to figure out the dynamics.  Like, for example,

5  I think -- I think it's just -- I'm giving the Court one

6  example.  I think it was purchased for like three five, and

7  then we saw it on the website for sale for eight.

8      And what we didn't know, whether it was -- Genesis

9  was just funding the purchase or whether their funding also

10 included monies to rehab the property or that -- was that

11 the purpose of the seconds that are from R.S. Lending and

12 from Paul Manafort.

13     MR. FORSYTHE:  Yes.  779 was purchased for 5.9

14 million.  I believe Genesis' lien is about 6.7, and I think

15 that's because of the accrual of interest of whatever.  I

16 don't think any money was provided by Genesis to develop the

17 property.

18     And the seconds on all the properties -- the

19 second on 779 and on Mt. Yohai, there's three seconds -- a

20 second, third and fourth, all from insiders.

21     MR. HAUSER:  But that was for the purpose of

22 rehabbing the property.

23     MR. FORSYTHE:  I believe so, but I have not

24 confirmed that.

25     MR. HAUSER:  Okay.  And the story, as you said, is

13

1 these are very high-end flips.  Because you look at the

2 website, the house looks beautiful.  So it's just a matter

3 of the value added was not dollar-for-dollar, and therefore,

4 they couldn't sell it for their estimated price --

5            MR. FORSYTHE:  Yes.

6            MR. HAUSER:  -- to take out Genesis.

7            The Genesis loans, how short were they?  I mean,

8 these look like real short-term --

9            MR. FORSYTHE:  Very short-term loans.

10            MR. HAUSER:  -- high-interest loans.

11            MR. FORSYTHE:  Yes.

12            MR. HAUSER:  Basically, hard money.

13            MR. FORSYTHE:  Is that correct, Mr. Pomerantz?

14            MR. POMERANTZ:  I don't have the specific of

15 the --

16            MR. HAUSER:  But I mean, we're looking at some of

17 the time frames, there was one property that was bought in

18 March.  I think the loan was due like in August.

19            MR. FORSYTHE:  Yes.

20            MR. HAUSER:  Okay.  So I just want to make sure

21 we're dealing with what it sounds like.  But none of the

22 Genesis money was to actually rehab the property.  That was

23 simply for the acquisition of the property.

24            MR. FORSYTHE:  That is my understanding, but I

25 cannot --

14

1          MR. HAUSER:  Okay.  We'll get this at the IDI.

2   And then the juniors was to essentially fund the rehab, and

3   it was just a math problem, so they thought.  We put in a

4   dollar, we create a dollar and a half of value, and it

5   didn't create that value.

6          MR. FORSYTHE:  I'll confirm all this with my

7   client on Friday, your Honor.

8          THE COURT:  Okay.

9          MR. HAUSER:  Yeah.  Because we're just going to

10  go -- now we're down three -- we'll go over each property.

11  Because we have the real property questionnaires, and

12  there's a lot of good information there.  But just trying to

13  figure out, you know, if that was the game plan.  And

14  something that was very short term, so it was, I guess, you

15  know, a pretty risky proposition, but no risk, no reward.

16  But that's the way it works.

17          That's really it, your Honor.  Again, we don't

18  have -- I don't think we have the DIP accounts open yet.

19          MR. FORSYTHE:  We do not.

20          MR. HAUSER:  Okay.  We can give you some

21  suggestions, if you have any problems with that.

22          MR. FORSYTHE:  Right.

23          MR. HAUSER:  Marilyn's got a couple of things.

24  That's important because if the case goes forward -- I know

25  there's no rents being collected now.

15

1          MR. FORSYTHE:  Well, we have to have someplace to

2   put the new volume on the --

3          MR. HAUSER:  The other question is, have the

4   properties been completely rehabbed such that they are

5   already for sale?

6          MR. FORSYTHE:  No, I do not believe so.

7          MR. HAUSER:  I know that one is vacant, so --

8          MR. FORSYTHE:  Yeah.

9          MR. HAUSER:  So Stradella and Blue Jay are not

10  actually completed, as far as for purposes of sale?

11          MR. FORSYTHE:  That's my understanding, Mike, but

12  like I said, my clients literally have not had a -- I'm

13  going to meet with my client on Friday.

14          THE COURT:  Okay.

15          MR. HAUSER:  Yeah.

16          MR. FORSYTHE:  Like I say, he's had severe medical

17  issues.

18          MR. HAUSER:  So that's the stuff we'll gather at

19  the IDI.  And if the Court wants to report sooner rather

20  than later, we can come back in two weeks, but -- or

21  whenever the hearing is.  We don't have the --

22          THE COURT:  We don't have the hearing on motion

23  yet.

24          MR. HAUSER:  Yeah.  So that it's all on the same

25  day, and we can give the Court more feedback.

*Briggs Reporting Company, Inc.*

16

1          MR. FORSYTHE:  Your Honor, I can -- when I get the

2   motion, I can notice up a status conference, a case --

3          THE COURT:  Well, I need to put something down.

4   And we can continue it.  I can put something down -- because

5   I don't want to lose track -- and then we can continue it.

6          MR. FORSYTHE:  Okay.

7          THE COURT:  Mr. Pomerantz, when do you think

8   you're going to set this motion for?  I'll try to put the

9   case management the same day.  What do you think?

10         MR. POMERANTZ:  Well, your Honor, we'll have it on

11  file by the end of next week.

12         THE COURT:  End of next week.  Okay.  So --

13         MR. POMERANTZ:  The week of the 20th maybe of

14  February or --

15         THE COURT:  Right.  Okay.

16         MR. POMERANTZ:  -- the week of the 13th.  We could

17  get it on file probably in time for that.

18         THE COURT:  That's my trial week, so we'll have to

19  do the 22nd.  Because I think the 8th is too short.  It

20  might -- the 8th might work.

21         MR. FORSYTHE:  I apologize, your Honor.  What was

22  that date?

23         THE COURT:  I have either the 8th or the 22nd of

24  February.

25         MR. POMERANTZ:  I think the 22nd of February.

17

1  That gives them enough time and --

2         THE COURT:  I think we should do that.  Yeah, I

3  think that we don't want to be rushed.

4         MR. HAUSER:  The good thing about -- our biggest

5  concern -- and I hope we'll have this clear -- but I assume

6  that there's insurance in place on all the properties, your

7  Honor.

8         MR. FORSYTHE:  We are getting insurance, yes.

9  Yes.

10         THE COURT:  Getting insurance.

11         MR. HAUSER:  Yes.  Okay.

12         MR. FORSYTHE:  Yeah.

13         THE COURT:  Okay.

14         MR. HAUSER:  So let me --

15         MR. FORSYTHE:  I think there's insurance in place

16  on -- on one or two of them.  I'm not sure all three.

17         MR. HAUSER:  Okay.  And then under --

18         MR. FORSYTHE:  There is -- yes.  I apologize.

19  There is insurance on all three.

20         THE COURT:  Okay.

21         MR. HAUSER:  Okay.  We'll need proof of that.  I

22  mean, that's probably the most critical thing from the point

23  of asset preservation is, obviously, you know, you don't

24  want someone walking through there, falling through a

25  whatever, and then you have an administrative claim that's

18

1  not covered by insurance and it hurts everyone.

2          MR. FORSYTHE:  Yeah.  Trust me, that's priority

3  one.

4          What date and what time on February 22?

5          THE COURT:  It would be at 10:00.

6          MR. HAUSER:  Ten.

7          MR. FORSYTHE:  February 22nd at 10:00 for --

8          THE COURT:  Let me see.  The people on the phone,

9  I've been ignoring you.  I'm sorry.  Did you want to chime

10 in?

11         MR. DAVIDOFF:  Your Honor, this is Brian Davidoff.

12 Again, Matter Number 16, Blue Jay Way.

13         Just so that the Court and the parties are aware,

14 my client invested, slash, loaned $3 million to this entity.

15 The operating agreement which was being negotiated among the

16 parties was never fully executed.  So we're not sure whether

17 we're a creditor or investor.  Not sure the basis of the

18 filing or the authority for the filing.

19         I'm not challenging any of that at this point,

20 your Honor.  I just want the Court to be aware that these

21 are issues that we're looking into.

22         THE COURT:  Well, I appreciate that.  Thank you.

23         MR. HAUSER:  Your Honor, is that -- does Mr.

24 Davidoff represent R.S. Lending or Mr. Manafort or --

25         MR. DAVIDOFF:  No, neither.  I represent an entity

19

1  by the name of DJ Blue Jay Way, LLC.  It's not R.S. Lending.

2  It's a third-party investor.

3          MR. HAUSER:  All right.  That's interesting.

4          THE COURT:  All righty.  And --

5          MR. HAUSER:  And you lent $3 million to this

6  entity?  I mean --

7          MR. DAVIDOFF:  Correct.

8          MR. HAUSER:  -- not you, your client, sir.

9          MR. DAVIDOFF:  Yes.

10          MR. HAUSER:  Okay.

11          MR. POMERANTZ:  I thought there was also someone

12  on the phone from R.S. Lending.

13          THE COURT:  There is.  There is Mr. Niemann.

14          MS. NIEMANN:  Yes.  Yes.

15          THE COURT:  Any comments?

16          MS. NIEMANN:  I represent R.S. Lending.

17          THE COURT:  And you're representing R.S. Lending?

18          MS. NIEMANN:  That's correct, your Honor.

19          THE COURT:  Any thoughts, comments, problems?

20          MS. NIEMANN:  We believe this is also a single-

21  asset real estate case, and we'll be looking forward to the

22  motion to designate filed by Genesis.

23          THE COURT:  All right.

24          MR. POMERANTZ:  Your Honor, can I get the spelling

25  of counsel's name and maybe her firm?  Because I couldn't

20

1  make it out from what she said.  I apologize.  And there

2  were no papers filed.

3          MS. NIEMANN:  Jennifer Niemann, N, as in Nancy, I-

4  E-M, as in Mary, A-N-N.  I'm with the law firm of

5  Felderstein, Fitzgerald, Willoughby & Pascuzzi, LLC.

6          MR. POMERANTZ:  Thank you.

7          THE COURT:  All right.  So it sounds like what

8  we're going to do is continue all of these except for the

9  one that was dismissed to February 22nd at 10:00 o'clock.

10 And we will probably have a motion at that point for

11 determination of whether these are single-asset real estate.

12          Very interesting issue.  So February 22nd at 10:00

13 o'clock for the remaining cases.  Anything else?  That's it?

14          MR. POMERANTZ:  That's it, your Honor.

15          THE COURT:  All righty.  So we will see you on

16 February 22nd at 10:00 o'clock.

17          ALL:  Thank you, your Honor.

18          THE COURT:  Thank you.

19          MS. NIEMANN:  Thank you, your Honor.

20          THE COURT:  Thank you.

21      (Proceedings concluded.)

22

23

24

25

21

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    /s/Shonna Mowrer                      1/26/17
     Transcriber                          Date
6
     FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8
     /s/L.L. Francisco
9    L.L. Francisco, President
     Echo Reporting, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*):  ***NOTICE OF MOTION AND MOTION OF GENESIS CAPITAL FOR ORDER DISMISSING CHAPTER 11 CASE AND GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JOHN DAY AND JEFFREY W. DULBERG IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 1, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- *Keith Patrick Banner     kbanner@greenbergglusker.com, sharper@greenbergglusker.com*
- *Brian L Davidoff     bdavidoff @greenbergglusker.com, calendar @greenbergglusker.com;jking@greenbergglusker.com*
- *Jeffrey W Dulberg     jdulberg@pszjlaw.com*
- *Donald W Fitzgerald     dfitzgerald@ffwplaw.com, shoang@ffwplaw.com*
- *Marc C Forsythe     kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com*
- *Michael J Hauser     michael.hauser @usdoj.gov*
- *United States Trustee (SA)     ustpregion16.sa.ecf @usdoj.gov*

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **February 1, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 1, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA Overnight Mail**
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| February 1, 2017 | Myra Kulick | */s/ Myra Kulick* |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Label Matrix for local noticing
0973-8
Case 8:16-bk-15171-CB
Central District of California
Santa Ana
Wed Feb  1 16:29:20 PST 2017

150 Blue Jay Way, LLC, a Delaware Limited

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

3991 MacArthur Blvd.
Suite 125
Newport Beach, CA 92660-3049

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

RS Lending, Inc.
Felderstein Fitzgerald Willoughby & Pasc
400 Capitol Mall, Suite 1750
Sacramento, CA 95814-4432

Securities & Exchange Commission
444 South Flower St., Suite 900
Los Angeles, CA 90071-2934

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

California TD Specialists
8190 East Kaiser Road
Anaheim, CA 92808-2215

Crest Real  Estate, LLC
11150 W. Olympic Blvd., Suite 700
Los Angeles, CA 90064-1825

DJ Blue Jay Way, LLC
c/o The Management Group
8383 Wilshire Blvd. #400
Beverly Hills, CA 90211-2400

Feffer Geological Consulting
1990 S Bundy Dr # 400
Los Angeles, CA 90025-5245

Franchise Tax Board
Bankruptcy Section MS A340
PO BOX 2952
Sacramento CA 95812-2952

Genesis Capital Master Fund III LLC
Attn: Yvonne Gruenberg
21650 Oxnard Street
Suite 1700
Woodland Hills, CA 91367-5058

James West Roofing & Waterproofing
1742 Grand Avenue
Suite 6
Long Beach, CA 90804-2021

LOS ANGELES COUNTY TREASURER AND TAX COLLECT
PO BOX 54110
LOS ANGELES CA 90054-0110

Monterey Energy Group, Inc.
26465 Carmel Rancho Blvd.
Suite 8
Carmel
Carmel, CA 93923-8747

Parker Resnick
1927 Pontius Avenue
Los Angeles, CA 90025-5611

Peak Surveys, Inc.
2488 Townsgate Road
Suite D
Westlake Village, CA 91361-6112

Questar Pools and Spas
600 S Andreasen Drive
Suite C
Escondido, CA 92029-1917

RS Lending, Inc.
501 Second  Street
Suite 700
San Francisco, CA 94107-4134

Steve Opdahl Surveying
187 E Wilbur Road
Suite 4
Thousand Oaks, CA 91360-7923

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Vantage Design Group
2634 S La Cienega Blvd
Los Angeles, CA 90034-2604

Marc C Forsythe
18101 Von Karman Avenue Ste 1200
Irvine, CA 92612-7119

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.