Marc C. Forsythe - State Bar No. 153854
Charity J. Miller – State Bar No. 286481
**GOE & FORSYTHE, LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
mforsythe@goeforlaw.com
cmiller@goeforlaw.com
Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Proposed Attorneys for 1550 Blue Jay Way, LLC
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>1550 BLUEJAY WAY, LLC, a Delaware limited liability company,<br><br>Debtor and Debtor in Possession. | Case No. 8:16-BK-15171-CB<br><br>Chapter 11 Proceeding<br><br>**OPPOSITION OF DEBTOR TO MOTION FOR ORDER DISMISSING CHAPTER 11 CASE, AND GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Filed concurrently herewith in support hereof is the Declaration of Jeff Yohai and Evidentiary Objections to John Day and Jeff Dulberg Declarations]**<br><br>Hearing:<br>Date: February 22, 2017<br>Time: 10:00 a.m.<br>Courtroom: 5D |

**TO THE HONORABLE CATHERINE BAUER, UNITED STATES BANKRUPTCY JUDGE, AND THE UNITED STATES TRUSTEE:**

Debtor and Debtor in Possession, 1550 BLUE JAY WAY, LLC, a Delaware limited liability company ("Debtor" or "1550 Blue Jay Debtor") hereby files its Opposition ("Opposition") to Motion Of Genesis Capital For Relief From Automatic Stay Under 11 U.S.C. § 362 Or, Alternatively, Motion For Order Dismissing Chapter 11 Case, And Granting Related Relief ("Motion") [Docket No. 40].

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Genesis' Motion to Dismiss is based on (1) inadmissible settlement discussions as evidence of bad faith negotiations, and such negotiations were between the potential third party investor (PJ Nottingham, LLC ("PJ")) and Genesis – and not the Debtor; (2) the allegation, without any evidentiary support, that this Debtor (2 months into this case) cannot effectuate a viable plan; (3) that a dispute over whether the Debtor is a "SARE" debtor pursuant to 11 U.S.C. Section 101(51B) constitutes "cause" to dismiss (with no case law authority to support the same); and (4) Debtor has no money or operations to fund the case or preserve or dispose of the its real property. Virtually all of the arguments above lack any legal authority or evidentiary support. Debtor has made it very clear from the January 11, 2017 Case Management Conference forward that its case requires outside funding. As noted in paragraph 16 of the Yohai Dec., PJ has made a proposal for 779 Stradella Debtor and Mt Yohai Debtor, and is in the process of making a proposal for 1550 Blue Jay Debtor.[1] Lastly, believes it is in substantial compliance with U.S.T., as set forth in Debtor's Opposition to the U.S.T.'s Motion to Dismiss or Convert.

Therefore, Genesis has not met its burden of proof and the Motion to Dismiss should be denied.

## II. STATEMENT OF FACTS

The UST Motions identify the following areas of non-compliance:

- Evidence that debtor-in-possession bank accounts have been opened.
- Declaration Regarding Compliance with U.S. Trustee Requirements.
- Final bank statements evidencing that any and all pre-petition bank accounts have been closed.
- List of Insiders.
- Financial statements including a balance sheet and a profit and loss statement.

[1] At times herein, 779 Stradella, LLC, a Debtor and Debtor in Possession in Case No. 8:16-bk-15156-CB will be referred to as "779 Stradella Debtor", Mt Yohai, LLC, a Debtor and Debtor in Possession in Case No. 8:16-bk-15157-CB will be referred to as "Mt Yohai Debtor", and 1550 Blue Jay Way, LLC, a Debtor and Debtor in Possession in Case No. 8:16-bk-15171-CB will be referred to as "1550 Blue Jay Debtor".

- A projected cash flow statement.
- Major Issues and Timetable Report.
- Tax returns for 2015.

1. **Evidence that debtor-in-possession bank accounts have been opened.** Attached as **Exhibits "1", "2", and "3"** to the Yohai Dec. are true and correct copies of the opened DIP accounts for all three debtors referenced in footnote 1 above.

2. **Declaration Regarding Compliance with U.S. Trustee Requirements**. Attached as **Exhibits "4", "5"and "6"** to the Yohai Dec. are a true and correct copies of the Declarations of Compliance for 1550 Blue Jay Debtor, 779 Stradella Debtor, and Mt Yohai Debtor.

3. **Final bank statements evidencing that any and all pre-petition bank accounts have been closed.** A letter from US Bank is attached to the Declarations of Compliance for 1550 Blue Jay Debtor, 779 Stradella Debtor and Mt Yohai Debtor as noted in paragraph 2 above. See Yohai Dec.

4. **List of Insiders.** The List of Insiders is attached to the Schedules and Statement of Financial Affairs filed on January 27, 2017, for 1550 Blue Jay Debtor [Docket No. 37], 779 Stradella [Docket No. 33], and Mt Yohai Debtor [Docket No. 34]. See Yohai Dec.

5. **Financial statements including a balance sheet and a profit and loss statement**. 1550 Blue Jay Debtor, 779 Stradella Debtor, and Mt Yohai Debtor did not regularly prepare financial statements at any time during their existence nor were required to by any creditor. See Declarations of Compliance noted in paragraph 2 above. See Yohai Dec.

6. **A projected cash flow statement**. None of the real properties owned by 2401 Nottingham Debtor, 1550 Blue Jay Debtor, 779 Stradella Debtor, or Mt Yohai Debtor are producing any income, so there are no cash flow projections. All of the Debtors require post-petition financing and/or equity contributions in order to reorganize and develop the properties. Along with such post-petition financing and/or commitments of equity contributions, each Debtor will submit the projected use of such capital. See Yohai Dec.

7. **Major Issues and Timetable Report**. The Major Issues and Timetable Report for 1550 Blue Jay Debtor, 779 Stradella Debtor, and Mt Yohai Debtor are attached to the Declarations of Compliance noted in paragraph 2 above. See Yohai Dec.

8. **Federal and tax income tax returns for 2015**. No tax returns have been filed by any of the Debtors since their inceptions - 2401 Nottingham Debtor, 1550 Blue Jay Debtor, 779 Stradella Debtor, or Mt Yohai Debtor. 2401 Nottingham Debtor was formed in 2015, 1550 Blue Jay Debtor was formed in 2015, 779 Stradella Debtor was formed in 2016, and Mt Yohai Debtor was formed in 2014. See Yohai Dec.

**Genesis' Motions to Dismiss**

9. Although Mr. Yohai authorized and will be responsible for developing the real estate project in each of the bankruptcy cases of 1550 Blue Jay Debtor, 779 Stradella Debtor and Mt Yohai Debtor, each is separate and not "affiliated", as Genesis attempts to characterize in the Motions to Dismiss. None of the Debtors are "affiliates" of each other. They are all separate entities and are not consolidated for tax or financial accounting purposes. None of the debt on the properties in each of these three separate Debtors is cross-collateralized with any other debtor. Therefore, the improper legal and factual conclusions by Mr. John Day (in his declaration in support of the Genesis' Motions to Dismiss/Convert) are incorrect. See Yohai Dec.

10. Paragraph 7(iv) of the Declaration of John Day in support of the Genesis' Motions to Dismiss/Convert references "Marin West" and its website address. Marin West is a separate limited liability company in the State of California that is 100% owned by Mr. Yohai and is the real estate development company that plans to develop each of the properties of each of the Debtors. Marin West has no financial or equity interest in any of the Debtors. Based on these facts, Mr. Day draws the improper legal/factual conclusion that the properties held by each of the Debtors are a "common development". See Yohai Dec.

11. The proposed development for each property held by 1550 Blue Jay Debtor, 779 Stradella Debtor, and Mt Yohai is for a single family residence. See Yohai Dec.

12. In relation to the argument by Genesis in the Motions to Dismiss that each Debtor has been engaged in "dilatory postpetition conduct" and that each of the Debtors is acting in bad faith, Mr. Yohai notes the following:

- Mr. Yohai was medically unavailable to address the foreclosure sale issues facing each of the Debtors for forty-five (45) days through January 12, 2017. Although Mr. Yohai authorized the filing of the bankruptcy cases for all four Debtors, Mr. Yohai was not available to provide critical information to counsel regarding UST compliance and his strategies for reorganizing the each of the debtors. Mr. Yohai has not acted in bad faith at any time during any of these bankruptcy proceedings.
- Genesis attributes bad faith negotiations to the Debtors, when the negotiations were being conducted with a third-party entity and its counsel (Wilson Keadjian Browndorf, LLP). All of the Debtors require a loan or capital infusion in order to reorganize. In order to do so, the capital required needs to be analyzed and the time to do so is not part of any bad faith on behalf of the Debtors or any third party, but simply proper due diligence. Mr. Yohai's unavailability for forty-five (45) days made such due diligence by any third party almost impossible prior to the scheduled foreclosure sales of the properties held by all of the Debtors (which necessitated the bankruptcy filings) and for the first several weeks of the bankruptcy cases. Therefore, the claim that negotiations between the third party and Genesis was and is being conducted in bad faith in order to delay and stall Genesis is incorrect.

See Yohai Dec.

13. Today, February 8, 2017, Mr. Yohai received the following proposal from a new lender, PJ Nottingham LLC ("PJN") to provide financing for the 779 Stradella Debtor and Mt Yohai Debtor. He expects to receive a plan for 1550 Blue Jay Debtor shortly. PJN is proposing that Genesis be brought current at their original rate of interest by PJN. From then, PJN will fund the interest amount due on all loans until the properties have received permitting for construction, as well as any amounts necessary to complete the permitting process. Debtor believes that the

permitting process will be 4 months for Mt Yohai Debtor and 14 months for 779 Stradella Debtor. Upon receiving permitting (RTI) the current loans will be repaid with a new construction financing. Debtor is confident that given the completion value, as described below, Debtor will be able to secure enough construction financing to both repay the loans and complete the projects. The following are the proposed terms.

**Mt Yohai Debtor**

Current Loan Amount: $ 715,000

Current Interest Arrearage (at original rate 9.99%): $ 59,524

Current Value: $ 3,000,000

Cost to RTI: $ 260,000

Value at RTI: $ 6,500,000

Completion Value: $ 22,500,000

Construction Budget: $ 7,500,000

**779 Stradella Debtor**

Current Loan Amount: $ 5,950,000

Current Interest Arrearage (at original rate 9%): $ 446,250

Current Value: $ 8,600,000

Cost to RTI: $ 180,000

Value at RTI: $ 10,000,000

Completion Value: $ 35,000,000

Construction Budget: $ 9,000,000

See Yohai Dec.

## III. ARGUMENT

### A. Genesis Has Not Met Their Burden of Proof for Dismissal Pursuant to 11 U.S.C. Section 1112(b).

#### 1. Legal Standard for Dismissal Pursuant to 11 U.S.C. Section 1112(b).

Section 1112(b) of the Bankruptcy Code, governing conversion or dismissal of a Chapter

11 case, states as follows:

(b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(2) The Court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors and the estate, and the debtor or any other party in interest establishes that

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1112(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph 4(A) –

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

A party moving for the conversion of a debtor's Chapter 11 case has the burden of proof of establishing that "cause" exists for converting the debtor's case. See, *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011) ("In assessing a motion made under Section 1112(b), the movant bears the burden of establishing cause…"); *In re Player Wire Wheels, Ltd.*, 421 B.R. 864, 868 (Bankr. N.D. Ohio 2009) ("The Movant bears the burden of proof with respect to the Motion…pursuant to 11 U.S.C. § 1112(b)"); *In re Tekena USA, LLC*, 419 B.R. 341, 350 (Bankr. N.D. Ill. 2009) (movant bears the "burden of proving by a preponderance of the evidence" that cause exists under Section 1112(b).).

A party moving to convert a Chapter 11 case based on the diminution of the estate and an absence of the likelihood of rehabilitation must prove both conditions exist. *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). In determining continuing loss or diminution to the

estate, a court must consider more than the Debtor's financial statements and must take into account the totality of the Debtor's present financial condition. *In re Moore Construction, Inc.*, 206 B.R. 436, 437-38 (Bankr.N.D.Tex.1997). "A continuing loss or diminution of the estate may be tolerated where reorganization is feasible and the pattern of unprofitable operations can be reversed as a result of a successful reorganization." *In re AdBrite Corp.*, 290 B.R. at 215. Section 1112(b)(4) of the Code provides that the term "cause" includes fifteen enumerated factors. Those factors include, but are not limited to, (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain proper insurance…; (D) unauthorized use of cash collateral…; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors; (H) failure to timely provide information or attend meetings reasonably requested by the United States Trustee; (I) failure to timely pay taxes owed after the date of the order for relief…; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of this title; (L) revocation of an order of confirmation…; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation.

Further, in an opinion written by Judge Klein, formerly of the BAP and Chief Judge of the Eastern District of California, it was held that § 1112(b)(1) of the Code, as amended, establishes a two-step analysis for determining whether to convert or dismiss: "First, it must be determined that there is 'cause' to [convert or dismiss under 11 U.S.C. § 1112(b)]. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.' In re Nelson, 343 B.R. 671, 675 (9th Cir. Bap 2006)(internal citations omitted).

**2. Inadmissible Settlement Negotiations and Genesis Bad Faith Arguments Are Not Sufficient Evidence to Meet Genesis' Burden of Proof for Dismissal Pursuant to 11 U.S.C. Section 1112(b).**

Concurrently filed with this Opposition are the Evidentiary Objections to the Declarations of Jeff Dulberg and John Day. Genesis argues in the Motion to Dismiss that these settlement negotiations between PJ and Genesis have been in bad faith and constitute "cause" to dismiss. Evidence of these settlement negotiations is inadmissible pursuant to FRE 408. Furthermore, these are settlement discussion between PJ and Genesis, and not the Debtor.

Genesis then claims that Debtor "improperly filed the Chapter 11 case (Motion, p. 11) without any evidence or legal authority that prevented Debtor from filing this case. Genesis claims that Debtor has no "ongoing business" is in complete contradiction to why Genesis loaned the Debtor the money in the first place – to develop the property. Developing property is the Debtor's ongoing business. Debtor has been very forthright since the January 11, 2017 Case Management Conference that outside funding is needed to further develop the properties. When outside funding is not available (like in the case of 2401 Nottingham, LLC), then the Chapter 11 case will be dismissed. As noted in the paragraph 16 of the Yohai Dec., PJ has proposed funding for the 779 Stradella Debtor and the Mt. Yohai Debtor, and will be making a decision on the 1550 Blue Jay Debtor shortly.

Lastly, Genesis claims Debtor is acting in bad faith by failing to comply with the UST requirements. Filed concurrently herewith and incorporated herein by this reference is Debtor's Response to the UST's Motion to Dismiss or Convert which addresses Debtor's belief that it is in substantial compliance with the UST requirements.

Therefore, based on Genesis inadmissible and insufficient evidence of bad faith conduct by the Debtor, there is not "cause" to dismiss Debtor's case and the Motion should be denied.

**3. Debtor is Not a SARE Debtor, and Debtor's Disagreement with Genesis on This Is Not "Cause" to Dismiss Pursuant to 11 U.S.C. Section 1112(b).**

First, Genesis cites to no case law that a good faith argument by a Debtor that it is not

a "SARE" debtor pursuant to 11 U.S.C. Section 101(51B) constitutes "cause" to dismiss. The Court can decide that these are SARE debtors, but the dispute and decision relating to a SARE determination is not "cause" to dismiss the Debtor's bankruptcy case.

Second, the evidence presented in the John Day declaration that Debtor is a SARE Debtor is objected to in the concurrently filed Evidentiary Objections.

Third, Debtor is not a SARE debtor based on the following arguments and admissible evidence.

Pursuant to the 11 U.S.C. § 101(51B) statutory definition, three criteria must be satisfied for the debtor to be deemed a single asset real estate (*SARE*): (1) the debtor must have real property constituting a *single property or project* other than residential real property with fewer than 4 residential units), (2) which generates substantially all of the gross income of the debtor, and (3) on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto." The burden of proof to establish the Debtors as a SARE is on the Moving Party. *In re Alvion*, 538 BR 527, 532 (S.D. Illinois 2015). Genesis does not provide any admissible evidence to meet its burden of proof, such that the Motion should be denied.

If the Court overrules Debtor's evidentiary objections, then Debtor notes that Genesis' entire argument rests on the "single project" analysis set forth in *In re Hassen Imports Partnership* (Bankr. C.D. Cal. 2012) 466 B.R. 492, 507. Before addressing the analysis in *Hassen*, Debtor notes that the Debtor owned multiple properties, and the moving party sought to group all of the properties as a single asset real estate case because all of the properties involved a "single project". Genesis is attempting to extend this ruling to three separate legal entities all separately owing non-contiguous real property that they each seek to develop. From a factual standpoint, *Hassen* is completely factually distinguishable. Furthermore, there is no case law applying SARE classification to three separate debtors, which would effectively result in a substantive consolidation of the three debtors - 1550 Blue Jay Debtor, 779 Stradella Debtor, and Mt Yohai Debtor. The Motion does not address substantive consolidation or the factors to be analyzed to

order the same.[2]

In denying the motion to treat the Debtor as a SARE Debtor, the Court *Hassen* looked at the following factors:

> "(1) the use of the properties; (2) the circumstances surrounding the acquisition of the properties, including the time of the acquisition and the funds used to acquire the properties; (3) the location of the properties and proximity of the properties to one another; and (4) any plans for future development, sale or abandonment of the properties. See *In re The McGreals,* 201 B.R. 736 (E.D. Penn. 1996)(considering, *inter alia,* the use of the properties, the acquisition of the properties and financing therefor, including the perspective of the lender of the development, the physical proximity of the properties and development plans); Use of the properties, however, is the sine qua non of a single project determination. (citation omitted). Where the properties are not presently used together in a common scheme, a single project cannot exist and the remaining factors, which help determine whether commonly used properties constitute a single project under the code, become irrelevant.

*Id.* at 508-9

As noted in the Yohai Dec., each of the properties for each of the separate Debtors were acquired at different times, all of the Debtors are separate entities, and the finances and financial statements of the three Debtors are not consolidated for tax or financial reporting purposes. Furthermore, there is no evidence that (1) the development of any property for any of the Debtors is dependent on each other; (2) the properties are not cross-collateralized; or (3) any monies have been commingled between any of the Debtors.

In addition to the lack of evidence submitted by Genesis (who has the burden of proof) and the evidence submitted by Debtor, a plain reading of the first element of the inclusive list of factors to be a SARE debtor pursuant to 11 U.S.C. § 101(51B) states the debtor must have real property constituting a *single property or project* **other than residential real property with**

---

[2] See *In re Standard Brands Paint, Co*., 154 B.R. 563 (C.D. Cal. 1993).

**fewer than 4 residential units** (emphasis added). All three debtors are developing single-family residences (which is not "other than residential real property") and the three Debtors collectively are developing three single family residences (which is "fewer than 4 residential units". Genesis does not provide any evidence or argument to refute this basic definitional problem. Therefore, by definition, the Debtors should not be substantively consolidated and deemed SARE debtors, and the Motion should be denied.

## IV. CONCLUSION

Based on the arguments and evidence presented herein, and the pleadings, declarations and evidentiary objections incorporated herein, Debtor respectfully requests that the Motion to Dismiss be denied.

Dated: February 8, 2017

Respectfully Submitted by

**GOE & FORSYTHE, LLP**

By: /s/Marc C. Forsythe
Marc C. Forsythe
Proposed attorneys for Debtor 1550 BLUE JAY WAY, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION OF DEBTOR TO MOTION FOR ORDER DISMISSING CHAPTER 11 CASE, AND GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 8, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Keith Patrick Banner kbanner@greenbergglusker.com, sharper@greenbergglusker.com**
- **Brian L Davidoff bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com**
- **Jeffrey W Dulberg jdulberg@pszjlaw.com**
- **Donald W Fitzgerald dfitzgerald@ffwplaw.com, shoang@ffwplaw.com**
- **Marc C Forsythe kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com**
- **Michael J Hauser michael.hauser@usdoj.gov**
- **United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) February 8, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** (state the method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 8, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows: Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Catherine Bauer, USBC, 411 West Fourth Street, Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 8, 2017 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |