BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
KEITH PATRICK BANNER (SBN 259502)
KBanner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for
DJ Blue Jay Way, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>1550 BLUE JAY WAY, LLC, a Delaware limited liability company,<br><br>Debtor. | Case No. 8:16-bk-15171-CB<br><br>Chapter 11<br><br>**OPPOSITION TO MOTION OF GENESIS CAPITAL, LLC FOR ORDER DISMISSING CHAPTER 11 CASE AND GRANTING RELATED RELIEF; DECLARATIONS OF LAYNE DAVID DICKER AND KEITH PATRICK BANNER**<br><br><u>Hearing</u><br>Date: February 22, 2017<br>Time: 10:00 a.m.<br>Crtrm: 5D<br>United States Bankruptcy Court<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

**I.    INTRODUCTION**

DJ Blue Jay Way, LLC ("DJ") hereby opposes Creditor Genesis Capital, LLC's ("Genesis") Motion of Genesis Capital for Order Dismissing Chapter 11 Case, and Granting Related Relief, filed on February 1, 2017 [Docket No. 40] (the "Motion"). Although DJ understands and appreciates the frustrations of Genesis regarding pre- and post-petition dealings with the debtor-in-possession, 1550 Blue Jay Way, LLC (the "Debtor"), the immediate dismissal

of this chapter 11 bankruptcy would potentially benefit only Genesis, to the detriment of DJ and all other parties with an interest in the bankruptcy estate. DJ opposes the Motion on the following bases: (a) Genesis has failed to make a *prima facie* showing that chapter 11 bankruptcy was filed in bad faith; (b) the Motion is premature, as creditors and other parties-and-interest have had insufficient time to investigate the affairs of the debtor and pursue potential claims relating thereto; (c) the Debtor has identified valuable preference claims that must be recovered for the benefit of the estate; and (d) Genesis' oversecured claim is adequately protected and thus expedient dismissal is unwarranted. Further, DJ opposes Genesis' request to designate this chapter 11 case as a "single asset real estate" under section 101(51B) of the Bankruptcy Code, as the subject property is a residential property of less than 4 units and is not part of a "single project" with affiliated bankruptcy cases.

## II. FACTUAL BACKGROUND

### A. General

Debtor commenced the within bankruptcy proceeding by filing a voluntary petition (the "Petition") under chapter 11 of title 11 of the United States Code, §§ 101, et seq. (the "Bankruptcy Code") on December 22, 2016 (the "Petition Date"). Debtor filed the Petition on an emergency basis without the required schedules, statements and other case commencement documents listed in section 2.1(b) of the Court Manual.

Debtor subsequently filed an Ex-Parte Motion to Extend Time to File Schedules, Statements of Financial Affairs, and Balance of Deficiency Documents on January 10, 2017 [Docket No. 18] which the court approved on January 10, 2017 [Docket No. 19-1]. Then, on January 19, 2017, Debtor filed Debtor's Second Ex-Parte Motion to Extend Time to File Schedules, Statements of Financial Affairs, and Balance of Deficiency Documents on January 10, 2017 [Docket No. 27], which the court approved on January 24, 2017 [Docket No. 32]. On January 27, 2017—after the bankruptcy case had been pending for over a month—Debtor filed the required schedules, statements, and other case commencement documents [Docket No. 37]. Only four days later, Genesis filed its Motion to dismiss the chapter 11 case.

**B.    DJ's Connection to the Debtor and Subject Property**

This chapter 11 case relates <u>only</u> to the real property located at 1550 Blue Jay Way, Los Angeles, California 90069 (the "Property"). Debtor's Schedule A values the Property at $7,500,000. Debtor's Schedule D discloses that the Property is encumbered by the following liens: (a) a first deed of trust lien in favor of Genesis in the amount of $5,505,512.83; (b) a second deed of trust lien in favor of RS Lending, Inc. in the amount of $884,000; and (c) property taxes and other involuntary liens totaling $159,712.93. Debtor's Corporate Ownership Statement filed concurrently with the schedules discloses the equity holders as "Baylor Holding, LLC (100%); DJ Blue Jay Way (preferred equity)." [Docket No. 37].

Pursuant to a "Deal Memo[1]" dated June 25, 2015 between the Debtor and DJ, DJ paid $3,000,000 to Debtor to be used in connection with the purchase of the Property. Though a single family home was, and is currently located on the Property, the understanding between DJ and Debtor was that the existing structure would be torn down, entitlements would be obtained, and then a luxury residence was to be built, having an ultimate sale of price of approximately $30,000,000. [Dicker Decl. ¶ 4]. At this time, the entitlement process has not been completed. [Dicker Decl. ¶ 5]. Upon information and belief, Jeffrey Yohai ("Mr. Yohai") the manager of the Debtor, used approximately $2,800,000 of DJ's payment to purchase the Property, and obtained a loan from Genesis for the balance of the purchase price. [Dicker Decl. ¶ 5]. The clear understanding between DJ and Mr. Yohai, was that once DJ advanced its payment and the Property was acquired, that Mr. Yohai would arrange for payment of the balance of the entitlements. Once the Property was entitled, Mr. Yohai would arrange for a construction loan to build the luxury residence. [Dicker Decl. ¶ 7].

According to the Deal Memo the parties thereto would negotiate and execute an equity contribution agreement within 30 to 45 days thereafter. [Dicker Decl. ¶ 8]. Subsequent to the payment, the parties engaged in extended negotiations regarding the terms of an operating agreement relating to the Debtor, but despite DJ's best efforts no such agreement was ever

---

[1] The Deal Memo includes language that it is confidential, accordingly a copy of the Deal Memo is not attached hereto.

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

36815-00100/2751653.2    3    OPPOSITION TO MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

executed. [Dicker Decl. ¶ 9]. Being concerned about (a) the delay in being able to reach and execute an operating agreement between the Debtor and DJ, (b) the lack of entitlement process by Mr. Yohai and (c) the financial ability of Mr. Yohai to fund the entitlements, DJ insisted that the Mr. Yohai grant to DJ a trust deed on the Debtor's Property to secure DJ's $3,000,000 payment. [Dicker Decl. ¶ 10]. On February 17, 2016 such a trust deed was recorded. Thereafter Mr. Yohai approached DJ to assure them the entitlements were in the process of being obtained but that he (Mr. Yohai) needed to secure additional financing to reimburse himself for entitlement costs that he had advanced. Mr. Yohai asked that DJ release its trust deed so that the Debtor could borrow additional funds. Based on the assurances that any further borrowed money would be deposited into a joint account, requiring DJ's approval for any payment, DJ agreed to release its lien on April 19, 2016. On the same day, a deed of trust was recorded in favor of RS Lending in the amount of $884,000. [Dicker Decl. ¶ 11]. Despite Mr. Yohai's assurance that the funds received as a result of this borrowing would not be spent without joint approval, on information and belief, Mr. Yohai has withdrawn these funds from Debtor without DJ's prior knowledge or approval. [Dicker Decl. ¶ 12].

At this point in time, DJ takes no position as to whether DJ's claim against the Debtor is that of an equity participant or a creditor, and DJ reserves all rights in that regard. DJ also, of course, reserves its right as to any claims it has against Mr. Yohai individually.

DJ has no claim or interest in the pending related chapter 11 cases of 779 Stradella, LLC (Case No. 8:16-bk-15156-CB) ("Stradella Case"); and Mt. Yohai, LLC (Case No. 8:16-bk-15157) ("Mt. Yohai Case", together with the Stradella Case, the "Related Cases"). DJ also asserted no claim or interest in the chapter 11 case of 2401 Nottingham, LLC (8:16-bk-15243), in which a dismissal is currently pending.

## III. GENESIS HAS FAILED TO SHOW "CAUSE" FOR DISMISSAL UNDER 11 U.S.C. § 1112(b)

### A. Filing Bankruptcy to Avoid Foreclosure is Not "Bad Faith"

As stated above, though DJ to a certain extent, commiserates with the frustrations of Genesis in its dealings with the Debtor, DJ does not take the position that the chapter 11 case was

36815-00100/2751653.2        4         OPPOSITION TO MOTION FOR ORDER
DISMISSING CHAPTER 11 CASE

1 "improperly filed" merely because Debtor's motivation behind the filing of the Petition was to

2 halt Genesis' foreclosure of the Property. Indeed, the filing of a chapter 11 petition to avoid

3 foreclosure, in and of itself, is not sufficient to show lack the good faith. *In re Arnold*, 806 F.2d

4 937, 939 (9th Cir. 1986). If such were the case, then a vast majority of chapter 11 filings would

5 face dismissal almost immediately upon filing. Any "chapter 11 debtor should be accorded a

6 reasonable time to prepare a plan of reorganization" despite the events that precipitated the

7 bankruptcy filing. *In re McDermott*, 78 B.R. 646, 651 (Bankr. N.D.N.Y. 1985). The subjective

8 intent of Debtor is not determinative in finding "bad faith" under section 1112(b) of the

9 Bankruptcy Code, but the analysis "encompasses several, distinct equitable limitations" placed on

10 a debtor-in-possession. *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994). Ultimately, "[g]ood faith

11 is lacking only when the debtor's actions are a *clear abuse* of the bankruptcy process." *Id.*

12 (emphasis added).

13 **B.   This Chapter 11 Case is Not a Two Party Dispute**

14 Genesis, admittedly, has the largest stake in this chapter 11 case, with a claim in excess of

15 $5.5 million secured by a first deed of trust on the Property. The size and priority of this claim

16 notwithstanding, Genesis inaccurately concludes that this chapter 11 case is "in essence, a two

17 party dispute." (Motion 11:13-14). DJ's $3 million stake in this chapter 11 cannot simply be

18 disregarded because it finds itself behind such a formidable claim. Nor should the other

19 unsecured claims aggregating $122,000 scheduled by Debtor be overlooked. *See* Debtor's

20 Schedule F [Docket No. 37].

21 Even if the Court were to find that the filing of the petition arose from the two-party

22 dispute between the debtor and Genesis, such a finding is insufficient to find "bad faith" under 11

23 U.S.C. § 1112(b). Petitions arising out of a dispute between two parties do not *per se* constitute a

24 bad-faith filing by the debtors. *In re Sullivan*, 522 B.R. 604, 616 (9th Cir. B.A.P. 2014).

25 Dismissal is only appropriate when the dispute between the parties would more appropriately be

26 resolved in a non-bankruptcy forum. *Id.* Here, the only resolution obtained through dismissal

27 would be Genesis' foreclosure of the Property, to the likely detriment of all other creditors.

28

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

36815-00100/2751653.2    5    OPPOSITION TO MOTION FOR ORDER
DISMISSING CHAPTER 11 CASE

### C. Failure to Make "SARE" Determination is Not *Prima Facie* Bad Faith

In the Motion, Genesis argues that Debtor is improperly attempting to "sidestep" the limitations placed on a "single asset real estate" ("SARE") debtor, and such sidestepping constitutes bad faith for the purposes of 11 U.S.C. § 1112(b). Genesis does not cite any authority to support the proposition that a debtor's failure to make a SARE designation is cause for dismissal. Moreover, as more fully addressed below, this chapter 11 bankruptcy case does not constitute a "single asset real estate" case as defined under 11 U.S.C. § 101(51B). Debtor properly did not designate this case as a SARE case upon the filing of the Petition and therefore Genesis may not assert this failure to designate as a basis for dismissal for "cause" under 11 U.S.C. § 1112(b).

## IV. THE MOTION IS PREMATURE, DISCLOSURES SHOULD BE PROPERLY INVESTIGATED AND POTENTIAL CLAIMS PURSUED

### A. The Motion is Premature

"[B]ankruptcy courts should not precipitously terminate a Chapter 11 case by prematurely converting or dismissing the case." *In re McDermott*, 78 B.R. at 651, citing *In re Tracey Service Co., Inc.,* 17 B.R. 405, 409 (Bankr.E.D.Pa.1982). As recounted above, Genesis filed this Motion only four days after Debtor filed the balance of required schedules, statements, and other case commencement documents on January 27, 2017. Genesis also filed the Motion prior to the first scheduled § 341(a) meeting of the creditors, which was held on February 3, 2017. Creditors of the bankruptcy estate and other parties-in-interest require sufficient time to investigate the disclosures of the Debtor to evaluate the Debtor's prospects of reorganization. Genesis asserts that Debtor has no ability to reorganize, but has not provided Debtor the opportunity to demonstrate such an ability. The Debtor properly sough an extension of the deadline file its schedules under Rule 9006(b) of the Federal Rules of Bankruptcy Procedure, and the Court twice found cause to grant the extension. Now that the schedules and statements have been filed, a number of inquiries have arisen, that should properly be investigated prior to any dismissal of the case.

### B. The Preference Payment to Mr. Yohai Must Be Recovered to the Estate

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Debtor's Statement of Financial Affairs filed concurrently with the schedules on January

2  27, 2017 ("SOFA") makes a very significant disclosure. According to the SOFA, within one year

3  prior to the Petition Date, payments totaling $720,000 for "reimbursement of costs" were made to

4  Mr. Yohai, the manager of the Debtor and a statutory "insider" as defined in section 101(31) of

5  the Bankruptcy Code. Mr. Yohai confirmed the prepetition receipt of the $720,000 at the §341(a)

6  meeting of the creditors held February 3, 2017. [Banner Decl.¶ 3]. Mr. Yohai further testified

7  that the source of the $720,000 was the loan proceeds from RS Lending, which obtained a lien

8  secured by a second deed of trust on the Property. [Banner Dec.¶ 4].

9    Section 547(b) of the Bankruptcy Code provides for the recovery of payments made to an

10  insider creditor within one year prior to the bankruptcy filing that is made on account of an

11  antecedent debt while the debtor is insolvent. *See* 11 U.S.C. § 547(b). On its face, this $720,000

12  payment to Mr. Yohai is a statutory preference and must be recovered for the benefit of the estate.

13  For this reason alone, the chapter 11 should not be dismissed at this time.

14  **V.    GENESIS IS ADEQUATELY PROTECTED**

15    The expediency of Genesis' request to dismiss this chapter 11 is undermined by the fact

16  that their secured claim is adequately protected. Debtor's Schedule A values the Property at

17  $7,500,000. Genesis neither disputes this value, nor offers evidence to the contrary. The Motion

18  indicates that the payoff amount of the claim as of the Petition Date was approximately

19  $5,500,000. Mot. 5:6. Thus, Genesis' claim is oversecured. When a secured creditor is

20  oversecured, they are protected by the value of the collateral exceeding the secured creditor's

21  claim, also known as the "equity cushion." A secured creditor's equity cushion is calculated by

22  dividing the equity remaining (after subtracting the movant's liens and any senior liens from the

23  collateral's fair market value) by the fair market value of the subject property. *See In re Mellor*,

24  734 F.2d 1396, 1401 (9th Cir. 1984). Junior lienholders are ignored when calculating the

25  movant's equity cushion. *Id.* at 1400-01. The Ninth Circuit has held that a 20% equity cushion

26  adequately protects a creditor's security interest. *In re Mellor*, 734 F.2d 1396, 1401 (9th Cir.

27  1984). Based on this calculation, Genesis is protected by an equity cushion of 27%.

28  Accordingly, under Ninth Circuit authority, Genesis' claim is adequately protected. With

**GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

adequate protection of their claim, the Debtor should be afforded an opportunity to present a means for reorganization.

## VI. GENESIS' REQUEST FOR "SARE" DESIGNATION SHOULD BE DENIED

Genesis requests a determination that the debtor is a SARE debtor as defined under section 101(51B) of the Bankruptcy Code. This request should be denied, as Genesis has failed to make a showing under the first statutory prong of the SARE determination: that the Property constitutes a "single property or project", other than residential real property with fewer than four residential units. 11 U.S.C. § 101(51B).

### A. The Property is a Residential Property with Fewer Than Four Residential Units

Genesis does not contend that the Property is a non-residential property. The Property was purchased as single family home lot with a completed residence thereon and has not been re-zoned for multi-family or commercial purpose. Genesis neither argues, nor cites any authority in support of a proposition that a residential property owned with the purpose of developing a single family home is subject to a SARE designation. Accordingly, a SARE designation as to this residential Property would be improper.

### B. Even if the Court Considered the Related Case Properties, A "Single Project" is Not Found

Seemingly in acknowledgment of the fact that the Property is residential real property with fewer than four residential units, Genesis argues that a SARE designation is warranted because the residential Property owned by the Debtor, taken together with the separate properties owned by the separate debtors of Related Cases, constitutes a "single project." This argument is a misplaced application of applicable authority.

First, Genesis cites no authority in which the court made the "single project" determination by looking to properties owned by separate debtors in separate chapter 11 bankruptcies. For instance, the primary authority relied upon by Genesis, *In re Hassen Imports Partnership*, involved multiple commercial properties owned by a single debtor, which the debtor acquired to develop and subsequently lease. 466 B.R. 492, 502 (Bankr. C.D. Cal. 2012) ("Debtor

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  owns each of the ten properties at issue.").

2        Second, even if the Court were to consider the properties separately owned by the debtors
3  in the Related Cases, the facts do no support a finding of a "single project." *See Hassen Imports*,
4  466 B.R. at 507 (determination as to whether properties constitute a single project is a factual
5  inquiry). Though Genesis provided a certain amount of financing for the purchase of the Property
6  and the properties of the Related Cases, Genesis did so in separate agreements with the separate
7  debtors. These documents do not contemplate that the individual properties "function together in
8  support of a common plan or scheme" as required by the Bankruptcy Code. *Id.* at 510. Rather,
9  these agreements functioned as separate financing transactions with separate entities, complete
10 with separate guaranties executed by Mr. Yohai. It should be noted that the deed of trust securing
11 Genesis's claim is secured by only this Debtor's Property. There do not appear to be any cross
12 default provisions. See for example Deed of Trust and Assignment of Rents, ¶ 12 stating " That
13 upon default by Trustor In payment of any *indebtedness secured hereby or in performance of any*
14 *agreement hereunder…* , [emphasis added]. (*See* Motion pg. 22).[2] Further the Loan Agreement,
15 attached at page 26 to the Motion, specifically relates to "1550 Bluejay Way, West Hollywood
16 Area, Los Angeles, CA 90069" and is executed only by this Debtor. Finally the recognition that
17 there was no cross default right is seen in the guarantee of Mr. Yohai which states that "The
18 words "indebtedness" and "credit" are used herein in their most comprehensive sense and include
19 any and all advances, debts, obligations, and liabilities, including interest thereon, *of Debtor*
20 *heretofore*… [emphasis added]. (Motion pg. 29).

21       In addition, the financing structure of the Property differs dramatically from properties of
22 the Related Cases. DJ supplied the $3 million to purchase the Property and has no involvement
23 in, or connection to the properties of the Related Cases. Similarly, RS Lending has a second deed
24 of trust lien on this Debtor's Property, but has not obtained any secured interest in the properties
25 of the Related Cases. Tying up the properties together solely because Genesis provided separate
26 financing to each entity, which were, in turn managed by Mr. Yohai, disregards the separate and

---

[2] The Loan Agreement does contain some contradictory language regarding cross-default, but the deed of trust contains no such provisions.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

distinct qualities of each transaction and ties DJ's and RS Lending's interest in with wholly unrelated properties.

### VII. CONCLUSION

By their Motion, Genesis hastily seeks a dismissal of this chapter 11 case before interested parties have had a full and fair opportunity to investigate the affairs of the Debtor. At the very least, a valuable preference action against Mr. Yohai has been identified and should be pursued on the bankruptcy estate's behalf. Genesis will not be prejudiced by the time it takes to sufficiently investigate the Debtor due to its position as an oversecured first lien creditor, which is protected by a sufficient equity cushion. There are certainly enough facts present in this chapter 11 case to raise an eyebrow and warrant further inquiry. Nevertheless, those facts do not amount to a *prima facie* showing of Debtor's bad faith. Furthermore, a determination that Debtor is a single asset real estate debtor would unfairly disregard the unique qualities of this bankruptcy *vis-à-vis* the Related Cases—the most significant of which being DJ's payment of $3,000,000 to the Debtor. Accordingly, DJ respectfully requests that the Court deny the Motion in its entirety.

DATED:  February 8, 2017              GREENBERG GLUSKER FIELDS
                                      CLAMAN & MACHTINGER LLP


                                      By: */s/ Brian L. Davidoff*
                                          BRIAN L. DAVIDOFF (SBN 102654)
                                          KEITH PATRICK BANNER (SBN 259502)
                                          Attorneys for DJ Blue Jay Way, LLC

36815-00100/2751653.2                 10              OPPOSITION TO MOTION FOR ORDER
                                                      DISMISSING CHAPTER 11 CASE

## DECLARATION OF LAYNE DAVID DICKER

I, Layne David Dicker, being fully sworn, hereby declare as follows:

1. I am a principal of The Management Group ("TMG"), which is a management firm specializing in the representation of high net worth individuals and celebrities. My firm has in this capacity represented the principals of DJ Blue Jay Way, LLC ("DJ") and also has represented DJ in its negotiations with 1550 Blue Jay Way, LLC, the debtor (the "Debtor") and Jeffrey Yohai. I was personally involved in these negotiations and discussions on behalf of DJ relating to that certain real property located at 1550 Blue Jay Way, Los Angeles, California 90069. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge and if I were called to testify, I would and could testify competently to the facts set forth in this declaration.

2. On or about June 25, 2015, I participated in the negotiation, on behalf of DJ, of a "Deal Memo" between DJ and Jeffrey Yohai ("Mr. Yohai") on behalf of the Debtor. The Deal Memo includes language that it is confidential, and accordingly a copy of the Deal Memo is not attached hereto.

3. Pursuant to the terms of the Deal Memo, DJ paid $3,000,000 to the Debtor to be used in connection with the purchase of the Property.

4. Though a single family home was, and is currently located on the Property, the understanding between DJ and Debtor was that the existing structure would be torn down, entitlements would be obtained, and then a luxury residence was to be built, having an ultimate sale of price of approximately $30,000,000.

5. It is my understanding that, at this time, the entitlement process on the Property is not complete.

6. Upon information and belief, Mr. Yohai used approximately $2,800,000 of DJ's payment to purchase the Property, and obtained a loan from Genesis Capital, LLC for the balance of the purchase price.

7. The clear understanding between DJ and Mr. Yohai, was that once DJ advanced its

36815-00100/2752455.2

1

payment and the Property was acquired, that Mr. Yohai would arrange for payment of the balance of the entitlements. Once the Property was entitled, Mr. Yohai was to arrange for a construction loan to build the luxury residence.

8. According to the Deal Memo, DJ and the Debtor were to negotiate and execute an equity contribution agreement within 30 to 45 days thereafter.

9. Subsequent to the $3,000,000 payment from DJ to the Debtor, I engaged in extended negotiations regarding the terms of an operating agreement relating to the Debtor, but despite my best efforts, no such agreement was ever executed.

10. Being concerned about (a) the delay in being able to reach and execute an operating agreement between the Debtor and DJ, (b) the lack of entitlement process by Mr. Yohai and (c) the financial ability of Mr. Yohai to fund the entitlements, I insisted that Mr. Yohai grant to DJ a trust deed on the Debtor's Property to secure DJ's $3,000,000 payment. On February 17, 2016 such a trust deed was recorded.

11. Thereafter, Mr. Yohai approached both me and the principals of DJ to assure us the entitlements were in the process of being obtained but that he (Mr. Yohai) needed to secure additional financing to reimburse himself for entitlement costs that he had advanced. Mr. Yohai asked DJ to release its trust deed so that the Debtor could borrow additional funds. Based on the assurances that any further borrowed money would be deposited into a joint account, requiring DJ's approval for any payment, DJ agreed to release its lien on April 19, 2016. On the same day a deed of trust was recorded in favor of RS Lending in the amount of $884,000.

12. On information and belief, Mr. Yohai has withdrawn these funds without DJ's prior knowledge or approval, despite Mr. Yohai's assurances to me that the funds received as a result of the borrowing from RS Lending would not be spent without joint approval.

Executed this 8th day of February, 2017, at Los Angeles, California.

LAYNE DAVID DICKER

36815-00100/2752455.2

2

# **DECLARATION OF KEITH PATRICK BANNER**

I, the undersigned, Keith Patrick Banner, hereby declare:

1. I am an attorney at law duly licensed to practice in the State of California before this bankruptcy court. I am an attorney in the law firm Greenberg Glusker Fields Claman & Machtinger LLP, counsel for DJ Blue Jay Way, LLC. I have personal knowledge of the facts as stated below and, if called as a witness, I could and would competently testify thereto under oath.

2. On February 3, 2017 at 11:00 a.m., I attended the § 341(a) Meeting of the Creditors in the chapter 11 bankruptcy case of 1550 Blue Jay Way, LLC (the "Debtor"). Jeffrey Yohai ("Mr. Yohai") appeared on behalf of the Debtor in his capacity as the Debtor's manager.

3. During questioning by Michael Hauser, the attorney for the United States Trustee, Mr. Yohai confirmed that he received $720,000 from the Debtor during the one-year period preceding the Debtor's bankruptcy filing.

4. Mr. Yohai further testified during questioning that the source of the $720,000 payment to Mr. Yohai from the Debtor was the loan proceeds obtained from RS Lending, Inc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of February 2016, at Los Angeles, California.

*/s/ Keith Patrick Banner*
KEITH PATRICK BANNER

36815-00100/2752494.1                                1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1900 Avenue of the Stars, 21st Fl., Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO MOTION OF GENESIS CAPITAL, LLC FOR ORDER DISMISSING CHAPTER 11 CASE AND GRANTING RELATED RELIEF; DECLARATIONS OF LAYNE DAVID DICKER AND KEITH PATRICK BANNER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 8, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Keith Patrick Banner    kbanner@greenbergglusker.com, sharper@greenbergglusker.com
- Brian L Davidoff    bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Donald W Fitzgerald    dfitzgerald@ffwplaw.com, shoang@ffwplaw.com
- Marc C Forsythe    kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com
- Michael J Hauser    michael.hauser@usdoj.gov
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) February 8, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 8, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via GSO
The Honorable Catherine E. Bauer
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Ste. 5165
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 8, 2017 | Julie King | /s/ Julie King |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

36815-00100/2752553.1