Richard M. Pachulski (SBN 90073)
Jeffrey W. Dulberg (SBN 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: 310.277.6910
Fax: 310.201.0760
Email: rpachulski@pszjlaw.com
       jdulberg@pszjlaw.com

Attorneys for Genesis Capital, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>1550 Blue Jay Way, LLC, a Delaware limited liability company,<br><br>Debtor. | Case No.: 8:16-bk-15171-CB<br><br>Chapter 11<br><br>**OMNIBUS REPLY OF GENESIS CAPITAL IN SUPPORT OF MOTION FOR ORDER DISMISSING CHAPTER 11 CASE AND GRANTING RELATED RELIEF**<br><br>[Relates to Dkt. Nos. 40, 50, 52, and 53]<br><br>Hearing Date:  February 22, 2017<br>Time:              10:00 a.m.<br>Courtroom:     5D |

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY JUDGE, DEBTOR AND ITS COUNSEL, THE UNITED STATES TRUSTEE, AND OTHER INTERESTED PARTIES:**

Genesis Capital, LLC (together with its affiliates, "Genesis" or "Movant") hereby files this Omnibus Reply in support of the *Motion of Genesis Capital for Order Dismissing Chapter 11 Case and Granting Related Relief* [Docket No. 40] (the "Motion"), and in response to the *Opposition of Debtor to Motion for Order Dismissing Chapter 11 Case, and Granting Related Relief* [Docket No. 52] ("Debtor's Opposition"), *Opposition to Motion of Genesis Capital, LLC for Order Dismissing Chapter 11 Case and Granting Related Relief* [Docket No. 53] filed by DJ Blue Jay Way, LLC ("DJ Opposition"), and *Debtor's Evidentiary Objection to Declarations of John Day and Jeffrey W.*

DOCS_LA:304008.3 30599/001

*Dulberg* [Docket No. 50] ("Evidentiary Objection").[1]  Genesis requests that the Debtor's Opposition, DJ Opposition and Evidentiary Objection be overruled, and that Genesis' Motion be granted, as provided as follows:

## ARGUMENT

As explained at the outset of the Motion, what Genesis seeks as the first-priority secured creditor in the Affiliated Cases is only that to which it is indubitably entitled – that the Affiliated Debtors adhere to reasonable time limitations and constraints given the facts and circumstances. While the Affiliated Debtors forcefully argue that they are not "single asset real estate" debtors under the Bankruptcy Code, the fact of the matter is that the result of that analysis should not alter the results.  If the Court is not otherwise inclined to grant relief from stay or dismiss these cases immediately, very little additional time should be accorded the Affiliated Debtors before they are required to commence interest payments to Genesis and/or file a confirmable plan.  The Affiliated Debtors have no business, there are no employees, and there are no legitimate interests to protect.  Recent Ninth Circuit law, as described in the Motion, will require reinstatement of Genesis' claim in full including all default interest, costs, fees, and charges, etc. and thus chapter 11 will not avail the Affiliated Debtors any relief other than time.

Genesis believes that either stay relief or dismissal of the Affiliated Cases (as requested) is appropriate, but ultimately asks the Court to determine the most appropriate relief to accomplish Genesis' reasonable goal (*e.g.*, establishment of a rational deadline such as March 15, 2017, for the Debtor to file a plan and disclosure statement).  Approximately nine weeks will have passed by the time of the hearing on the Motion.  Yet, the Debtor has only provided the unsubstantiated claim (with no supporting letter of commitment or otherwise) that "I [Debtor's principal, Jeffrey Yohai] expect to receive a plan for 1550 Blue Jay Way Debtor shortly [from a potential lender]."  Yohai Declaration [Docket No. 49], p. 5, para. 16.

Furthermore, the credibility and reliability of Mr. Jeffrey Yohai (the Affiliated Debtors' principal) has now come further into question.  After filing its Motion, Genesis attended the 341(a) examination for this Debtor at which Mr. Yohai testified to the United States Trustee regarding

---

[1] All capitalized terms not defined herein have the meaning ascribed to such term in the Motion.

2

various matters for the first time, including potential investor fraud claims. This led counsel to investigate further the *bona fides* of Mr. Yohai to serve as a fiduciary for creditors. This investigation revealed that Mr. Yohai has allegedly been operating a Ponzi scheme and committing other malfeasance, as set forth in a recent lawsuit described at http://www.nydailynews.com/new-york/nyc-crime/ex-trump-aide-paul-manafort-son-in-law-accused-ponzi-scheme-article-1.2879263 (discussing assertions, among others, that Mr. Yohai, instead of properly investing third party funds to purchase real property, converted and used such funds for speculative ventures and lavish purchases and undertook a year-long campaign of delay and obfuscation).[2] Genesis has asked for further information concerning these fraud allegations but has been summarily rebuffed by the Debtor's counsel.

In short, the Debtor (essentially Mr. Yohai), again, tells Genesis and interested parties to trust the Debtor and to just wait. But as discussed in the Motion, the Debtor's prepetition and postpetition track record, as well as the disconcerting allegations against Mr. Yohai noted above,[3] strongly suggest that the Debtor's promise is highly questionable, at best.

**1.    All of the Facts and Circumstances Should Be Considered Collectively**

Nowhere in Genesis' pleadings does Genesis suggest that the Debtor's case should be dismissed, only because the Affiliated Cases' center on a two-party dispute between Genesis and the Affiliated Debtors or only because the Debtor patently filed its chapter 11 case to thwart Genesis' pending foreclosure proceedings. As discussed in the Motion, such factors should be considered with other material factors, which collectively reveal the Debtor's improper desire to unduly delay and frustrate Genesis' state law rights.[4]

---

[2] Genesis requests that the Court take judicial notice of this news publication, a copy of which is attached hereto as **Exhibit D**, pursuant to Fed.R.Evid. 201(b).

[3] In the event that the Court is not inclined to grant immediate relief to Genesis, Genesis requests a reasonable opportunity to investigate this matter (including having the Court direct Mr. Yohai to be deposed) as, among other things, these allegations bear on Mr. Yohai's fitness to serve as the DIP and manage the Affiliated Debtors postpetition.

[4] It should be noted that DJ itself was purportedly the victim of prepetition stonewalling and other suspect practices by Mr. Yohai in relation to the Property and DJ's asserted interests therein. *See* DJ Opposition, pp. 3-4 (referring to Mr. Yohai's "delay" with respect to certain matters; "Despite Mr. Yohai's assurance that the funds received as a result of this borrowing would not be spent without joint approval, on information and belief, Mr. Yohai has withdrawn these funds from Debtor without DJ's prior knowledge or approval."). Genesis reserves all of its rights with respect to DJ and any of its asserted interests in and rights with respect to the Property.

3

Among other factors, the Debtor failed to timely comply with its bankruptcy related obligations, as pointed out by the U.S. Trustee. That the Debtor, in response to parties in interest complaining about this fact, tries to comply with its obligations at the last minute is almost beside the point. In the first instance, the Debtor's postpetition pattern was to attempt to shirk its responsibilities.

## 2. **The Dulberg and Day Declarations, and Debtor's Own Admissions**

Consistent with that pattern, the Debtor also engaged in bad faith postpetition stonewalling with Genesis, as explained in the Motion and in the Dulberg Declaration. With respect to the Dulberg Declaration, the Debtor's evidentiary objection thereto should be overruled. Mr. Dulberg explained certain postpetition interactions evidencing the Debtor's bad faith, and his testimony is not precluded as inadmissible settlement discussions under Fed. R. Evid. 408. It is well-established that even if Mr. Dulberg's testimony had revealed any settlement discussions (which it did not), such evidence is certainly admissible to prove a party's bad faith, as in the instant matter. *See, e.g., Athey v. Farmers Ins. Exchange*, 234 F.3d 357, 362 (8th Cir. 2000); *United States v. Union Pacific Railroad Co.*, 2007 U.S. Dist. LEXIS 40178, *15 (E.D. Cal. May 23, 2007) ("[T]the Federal Rules of Evidence contemplate the potential admissibility of certain information regarding settlement discussions for limited purposes, not including the establishment of liability. Permissible purposes can include 'proving a witness's bias or prejudice; negating a contention of undue delay . . .,' … as well as notice, … bad faith, … and intent with respect to scope of a settlement release provision." (internal citations omitted)); *Am. Gen. Life Ins. Co. v. James*, 2015 U.S. Dist. LEXIS 20768, *15-*16 (N.D. Cal. Feb. 19, 2015).

With respect to the Debtor's objection to the Day Declaration, it is telling and important that the Debtor itself has admitted many of the material facts (which are supported by Mr. Day in his declaration and/or the relevant loan documents which have been filed with the Court and which speak for themselves), including that:

(i) Mr. Jeffrey Yohai effectively controls the Affiliated Debtors (*see, e.g.,* 1550 Blue Jay Way "Statement Regarding Corporate Resolution" [Docket No. 37]; 1550 Blue Jay Way

4

Statement of Related Cases [Docket No. 37] (identifying the other Affiliated Debtors as "AFFILIATES/Same shareholder/managing member as Debtor in the within case");

       (ii)    Mr. Yohai was (is) responsible for developing the properties owned by the Affiliated Debtors (1550 Blue Jay Way Opposition, p. 4, para. 9);

       (iii)    the Affiliated Debtors' properties were (are) being developed and planned for sale by Marin West which is "100% owned by Mr. Yohai" (1550 Blue Jay Way Opposition, p. 4, para. 10);

       (iv)    the Loan Documents (filed with the Court) evidence that all of the Affiliated Debtors' business loans provided by Genesis are guaranteed by Mr. Yohai and each are cross-defaulted with the other; and

       (v)    the Debtor has no money and no firm proposed financing commitment (*see* 1550 Blue Jay Way Schedule A/B, Part I (Docket No. 37); Yohai Declaration [Docket No. 49], p. 5, para. 16 ("I [Debtor's principal, Jeffrey Yohai] expect to receive a plan for 1550 Blue Jay Way Debtor shortly [from a potential lender]" but no such plan received as of the filing); Debtor's Opposition, p. 9, lines 17-18 (asserted potential lender "*will* be making a decision on the 1550 Blue Jay Debtor" (emphasis added)).[5]

Further, as a part of its overall *modus operandi*, the Debtor acted in bad faith in having not properly designated the four Affiliated Cases as SARE cases in order to avoid the special statutory strictures provided in favor of secured lenders in SARE cases. Contrary to the Debtor's claim in its Opposition, and as noted above, the Affiliated Debtors clearly are affiliates of one another, since, among other things, Mr. Yohai admittedly controls each and every one of the Affiliated Debtors. *See, e.g., In re Petroleum Tank Lines, Inc.*, 10 B.R. 286 (Bankr. W.D. N.Y. 1981) (a debtor company is affiliate of another company when control of both is in the same person). Moreover, as noted above and discussed in the Motion, while not cross-collateralized, the Debtor does not dispute at all Genesis' reading of the relevant loan documents demonstrating that all of the Affiliated Debtors'

---

[5] Apparently, as indicated by Exhibit 1 to the Yohai Declaration, only $25 was deposited into each of the postpetition DIP accounts, in order to open up such accounts with the bank.

business loans provided by Genesis are guaranteed by Mr. Yohai and each are cross-defaulted with the other.

In short, Genesis should be provided reasonable protections from a Debtor (controlled by Mr. Yohai, against whom serious Ponzi scheme and malfeasance allegations have been made) that has already admitted many of the relevant facts, that persistently acted in bad faith, and that has provided no evidence of the real prospects for financing which the Debtor indisputably needs to emerge.

WHEREFORE, for the reasons set forth above and in the Motion, Movant requests that the Court enter an order dismissing the Chapter 11 Case under § 1112(b) with prejudice, and granting such other and further relief as the Court deems necessary and appropriate.

Dated: February 15, 2017          PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey W. Dulberg*
Richard M. Pachulski
Jeffrey W. Dulberg

Attorneys for Genesis Capital, LLC

6

DOCS_LA:304008.3 30599/001

# EXHIBIT D

# Ex-Trump aide Paul Manafort's son-in-law sued over alleged Ponzi scheme

BY BY VICTORIA BEKIEMPIS
NEW YORK DAILY NEWS    Friday, November 18, 2016, 3:17 PM



The son-in-law of Paul Manafort, pictured, is facing a $3 million lawsuit for allegedly bilking celebrity photographer Guy Aroch in a Ponzi scheme. (CHIP SOMODEVILLA/GETTY IMAGES)

The son-in-law of Donald Trump's ex-campaign manager swindled a famous photographer out of some $3 million through a Ponzi scheme, using his relative's name to attract unsuspecting investors, a new lawsuit alleges.

Jeffrey Yohai, who's married to former Trump campaign manager Paul Manafort's daughter, sold celeb photographer Guy Aroch a 20% stake in a real-estate partnership for $2 million in January 2015, according to the Manhattan Federal Court lawsuit.

Aroch and his wife agreed in February 2016 to buy a $900,000 condo from Yohai, the suit says.

Rather than invest the money as promised, "Yohai converted and used most or all of the above-referenced funds for personal travel; lavish purchases; and/or speculative ventures outside the investment mandates… in violation of federal wire-fraud statutes and in breach of his fiduciary duties to Aroch," the suit says.

Yohai's lawyer could not immediately be reached.

Yohai allegedly failed to tell Aroch how he actually spent the money.

Instead, "Yohai commenced a year-long campaign of delay and obfuscation - including well-documented fraudulent lulling statements - in an effort to avoid his repayment obligations to Aroch.

"As the son-in-law of Paul Manafort - Trump's former campaign manager - Yohai has had the opportunity to meet numerous public figures and celebrities, many of whom he has successfully convinced to invest in his businesses," the suit says of the allegedly bogus businessman.



The suit continues, "Typically, Yohai promises his investors a quick and large return on their investments. When this promised financial performance fails to materialize and investors express their concern, Yohai simply recruits new investors to newly established LLCs - with the same claims of quick success - and repays his earlier investors with these incoming funds.



Aroch, pictured in 2014, says Yohai squandered Aroch's $2 million investment in a supposed real-estate company. (THOS ROBINSON/GETTY IMAGES FOR FLAUNT MAGAZINE)

"In this regard, Yohai is believed to be operating a Ponzi scheme," court papers maintain.

Aroch confronted Yohai about his money in September.

Yohai agreed to "personally" guarantee repayment of the nearly $3 million by Oct. 31 - with interest and legal fees.

Yohai has yet to make good on his promise, the suit maintains.

Aroch's lawyer declined comment Friday.

© 2016 New York Daily News

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*): **OMNIBUS REPLY OF GENESIS CAPITAL IN SUPPORT OF MOTION FOR ORDER DISMISSING CHAPTER 11 CASE AND GRANTING RELATED RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 15, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- *Keith Patrick Banner    kbanner@greenbergglusker.com, sharper@greenbergglusker.com*
- *Brian L Davidoff    bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com*
- *Jeffrey W Dulberg    jdulberg@pszjlaw.com*
- *Donald W Fitzgerald    dfitzgerald@ffwplaw.com, shoang@ffwplaw.com*
- *Marc C Forsythe    kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com*
- *Michael J Hauser    michael.hauser@usdoj.gov*
- *United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov*

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 15, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA Overnight Mail**
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 15, 2017 | Myra Kulick | */s/ Myra Kulick* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:303351.1 30599/001